[L. A. No. 10903.  In Bank.—July 31, 1929.]

CITY OF INGLEWOOD (a Municipal Corporation), Appellant, v. COUNTY OF LOS ANGELES (a Political Subdivision of the State of California), Respondent.

Clyde Woodworth, City Attorney, for Appellant.

Everett W. Mattoon, County Counsel, and W. Sumner Holbrook, Jr., and Gordon Boller, Deputies County Counsel, for Respondent.

CURTIS, J.—This action was brought under the provisions of section 3819 of the Political Code of this state for the refund of certain special assessments and penalties paid under written protest upon publicly owned and used property of the City of Inglewood, situated in the County of Los Angeles. The action comes before us upon an appeal from a judgment of the superior court of said county, sustaining a general demurrer of the County of Los Angeles to the complaint of said City of Inglewood. These special assessments were levied by the county officials

of said County of Los Angeles, acting for and on behalf of the Los Angeles Flood Control District, the Los Angeles County Sanitation District No. 5 and the Los Angeles County Drainage District No. 8. The complaint states the following facts regarding said districts and the several assessments which are the subject of this action:

1. Los Angeles County Flood Control District was created by an act of the legislature of the state of California, entitled "Los Angeles County Flood Control Act," approved June 12, 1915, Statutes of 1915, page 1502. Said district was duly and regularly established under the provisions of said act on August 11, 1915, and at all times since has duly and regularly performed the governmental purposes set forth in said act. Further facts regarding said district may be found in the decision rendered by this court in the action entitled *Los Angeles County Flood Control District* v. *Hamilton*, reported in 177 Cal. 119 [169 Pac. 1028]. Under and by virtue of the provisions of said act there was levied upon the property included within said district for the fiscal year beginning July 1, 1927, and ending June 30, 1928, a special assessment on land and improvements only of eleven (11) cents per hundred dollars of assessed valuation.

2. Los Angeles County Sanitation District No. 5.

Under and by virtue of an act of the legislature of the state of California, entitled "An act authorizing the creation, government and maintenance of county sanitation districts, issuance of bonds by such districts and the powers thereof," approved May 29, 1923, Statutes of 1923, page 498, as amended, there was validly and legally established prior to said first Monday in March, 1927, a certain assessment district known as Los Angeles County Sanitation District No. 5. Jurisdiction of the said district over the land and improvements included therein for the purposes of said district including the levy of special assessments thereon attached on the thirty-first day of March, 1924. Under and by virtue of the provisions of said act there was levied on land and improvements located in said Los Angeles County Sanitation District No. 5 a special assessment for the fiscal year beginning July 1, 1927, and ending June 30, 1928, of twenty-six (26) cents per hundred dollars of assessed valuation.

3. Los Angeles County Drainage District No. 8.

Under and by virtue of the provisions of an act of the legislature of the state of California, entitled "An act to promote the drainage of wet, swamp and overflow lands, and to promote the public health in the communities in which they lie; providing for the issuance of bonds and levying of assessments on lands benefited, to pay the cost and expenses thereof," Statutes of 1919, page 731, as amended, there was prior to the first Monday in March, 1927, created in the County of Los Angeles a certain special assessment district known as "Drainage Improvement District No. 8 of Los Angeles County." Jurisdiction of the said district over the land and improvements included therein for the purposes of said district including the levy of special assessments thereon attached on the seventeenth day of March, 1924.

There was validly levied under and by virtue of the provisions of said act in zone "H" of said Drainage Improvement District No. 8 of Los Angeles County, for the purpose of creating a fund for the payment of interest and sinking fund on the bonds of said district, a special assessment of eight (8) cents ·per hundred dollars of assessed valuation of land only located in said district.

Under the provisions of all of said acts the special assessments of said districts are levied and collected at the same time and in the same manner as the general tax levy for county purposes in the County of Los Angeles.

Subsequent to the first Monday in March, 1927, the tax collector of the County of Los Angeles, acting as tax collector of the Los Angeles County Flood Control District, and on behalf of said Los Angeles County Sanitation District No. 5 and Drainage Improvement District No. 8 of Los Angeles County, presented certain tax bills to the City of Inglewood, said tax bills showing assessments against the property described in the complaint under each of said districts. Said assessments were not paid and on the eighth day of June, 1928, the properties were duly and regularly advertised for sale, and on the thirtieth day of June, 1928, were sold to the state in the usual manner. On or about the ninth day of July, 1928, said property was redeemed from the sale, payment being made under protest, and thereupon this action was brought to recover the sum so

paid under the provisions of section 3819 of the Political Code, as aforesaid.

All of the property described in said assessments is situated in the City of Inglewood and within the various named districts and zones heretofore mentioned and was at the respective dates on which said districts were created or organized privately owned property, but since the creation and organization of said districts said property has been acquired by said City of Inglewood and at 12 o'clock noon on the first Monday of March, 1927, the City of Inglewood was and ever since said date has been the owner of the whole of said property, and all of said property on said last-named date was and at all times thereafter has been exclusively devoted to and actually used by said City of Inglewood for public purposes.

The sole question presented on this appeal is whether or not property which was privately owned at the time of the creation of an assessment district under any one of the above-mentioned acts, but which subsequently became public property, used for a public purpose, is subject to assessment for the improvement or other work for which the district is created.

The language of the three acts with reference to the assessments, the issuance of bonds and the property within the respective districts liable for the payment of the assessment levied for the purpose of paying the bonded indebtedness and other charges against the district, while not in the same phraseology, is not materially different and need not be set out in full. It is sufficient to say that there is a provision in each of the three acts which provides for the raising of funds by means of a bonded indebtedness to meet the expense of improvements made by the several districts, and to levy an annual *ad valorem* tax for the purpose of paying the amount due on the bonds of the district and for the maintenance thereof. In the Flood Control District this tax is levied "upon the taxable real property in said district" and "all real property in the district shall be and remain liable to be taxed for such payments as hereinafter provided." In the Sanitation District this tax or assessment is levied and collected "upon all the taxable real property within the district" and the bonds issued under the provisions of the act governing the organization

of said district "shall be a lien upon the real property of the district . . . and all the real property in the district shall be and remain liable to be taxed for such payments as hereinafter provided." In the Drainage District the act providing for its organization directs that "the board of supervisors shall annually at the time of making the general tax levy for general county purposes levy special assessment taxes on the land (exclusive of improvements, but inclusive of the land of public utilities) within the several zones theretofore established. The board shall determine the total sum that will be needed to meet the payments of principal and interest on the bonds of the district that will fall due before the proceeds of the next annual levy are available and shall determine the amount to be raised for each zone according to the percentage fixed for each zone. The special assessment tax to be levied in each zone shall be at the rate based on the value of the land in the zone as assessed for the purpose of general county taxation clearly sufficient to raise the amount determined by the board to be raised from such zone."

It will be noted that in the Flood Control and Sanitation Districts all "taxable real property" is made liable for the payment of the special assessments which would, of course, include improvements upon real property, while in the Drainage District land exclusive of improvements is made the sole source from which revenue is to be derived by the levy of special assessments. Whether any distinction is to be made between "taxable real property" as used in the Flood Control and Sanitation Acts, and "land" as used in the Drainage Act is not necessary for us to decide in this action.

There is a broad and well-recognized distinction between a tax levied for general governmental or public purposes and a special assessment levied for improvements made under special laws of a local character (*San Diego* v. *Linda Vista Irr. Dist.*, 108 Cal. 189 [35 L. R. A. 33, 41 Pac. 291]; *City Street Improvement Co.* v. *Regents, etc.*, 153 Cal. 776 [18 L. R. A. (N. S.) 451, 96 Pac. 801].) As to the former, that is, a tax for governmental purposes, property of a municipality is exempt therefrom by express provision of the constitution of this state and of the Political Code. (Const., sec. 1, art. XIII; Pol. Code, sec. 3607.) These

provisions of the constitution and code, however, do not apply to special assessments, and property of a municipality or other property publicly owned may, under certain circumstances, be made liable for special assessments. (*City of San Diego* v. *Linda Vista Irr. Dist., supra; City Street Improvement Co.* v. *Regents, etc., supra; Los Angeles County Flood Control Dist.* v. *Hamilton, supra; City of Pasadena* v. *McAllaster,* 204 Cal. 267 [267 Pac. 873].) The rule is aptly stated by Judge Cooley in the following language: ''While these local assessments are taxed under a taxing power, they are not taxes in the ordinary understanding of that term, and that, consequently, the usual exemptions from taxation will not preclude the property exempt being subject to them.'' (Cooley on Taxation, 2d ed., p. 650.)

■ Nevertheless, the power to levy a special assessment is the exercise of the same power as that exerted in the levy of an ordinary tax for governmental purposes. Both have their source in the fundamental power inherent in all governments. (*Fallbrook Irr. Dist.* v. *Bradley,* 164 U. S. 112 [41 L. Ed. 369, 17 Sup. Ct. Rep. 56]; *County of Santa Clara* v. *Southern Pac. R. R. Co.,* 18 Fed. 385.) In this latter case the court said (p. 411): ''Taxation for local improvements, or for city, county, or town purposes, involves the exercise of the same power which is exerted in taxation for state or general purposes. It is the sovereign power of the state in both cases which authorizes the tax, whether that power be exerted directly by an act of the legislature, or by a municipal body as an instrumentality of the state. 'That these assessments,' says Cooley, speaking of such as are special, 'are an exercise of the taxing power, has over and over again been affirmed, until the controversy may be regarded as closed.' ''

■ While publicly owned and used property is not exempt from special assessments under the constitution or statutory law of this state, there is an implied exemption of such property from burdens of that nature. This rule is stated by Dillon as follows: ''The principle which makes property of the state or any of its political or municipal subdivisions nontaxable under general statutory provisions and in the absence of a positive direction therefor, according to the great weight of authority, also precludes the

imposition of a special assessment for a street or other local improvement upon such property, unless there is positive legislative authority therefor." (4 Dillon on Municipal Corporations, p. 2577, sec. 1446.) This rule has been uniformly approved and followed in this state. (*San Diego* v. *Linda Vista Irr. Dist., supra; Witter* v. *Mission School Dist.,* 121 Cal. 350 [66 Am. St. Rep. 33, 53 Pac. 905]; *City Street Improvement Co.* v. *Regents, etc., supra; Raisch* v. *Regents, etc.,* 37 Cal. App. 697 [174 Pac. 943]; *City of Fresno* v. *Fresno Irr. Dist.,* 72 Cal. App. 503 [237 Pac. 772]; *Reclamation Dist. No. 684* v. *East Bay Municipal Utility Dist.,* 91 Cal. App. 143 [266 Pac. 969].)

The respondent admits that all property owned by said City of Inglewood and by it devoted to public use at the date of the creation of said several districts was exempt from assessments. At the time of the trial it was stipulated by the parties to this action "that so far as the complaint was based upon payments of special assessments and penalties thereon upon property which was in public ownership and use upon the date of the establishment of the particular assessment district, under and by virtue of which said special assessments were levied, that judgment might be entered therefor for the plaintiff." Respondent, however, insists that a distinction should be made as to property which was in private ownership when such particular district was organized and thereafter was acquired by the City of Inglewood and by it devoted to one or more of the public uses of said city. Respondent contends that to release such property from its proportion of the cost of maintaining said district and of making improvements therein would be to cast upon the balance of the property owners in said district an additional burden without giving them any notice thereof or any opportunity to be heard, and would accordingly amount to the taking of the property of the other land owners in said district without due process of law. Respondent further contends that unless all property in private ownership at the time the particular district was organized continues to be liable for special assessments, even if it thereafter becomes the property of a municipal corporation, devoted to public use, the contract of said district with its bondholders will become unconstitutionally impaired. No direct authority is cited by respondent in

support of either of these propositions. Respondent, however, relies upon certain decisions of this and other jurisdictions as declaring principles which if applied to the facts in the present proceeding would compel this court to hold in favor of its contentions. We will discuss some of the more important of these authorities and attempt to show their applicability or nonapplicability to the facts of this case. The first of these is the case of *City of Santa Monica* v. *Los Angeles County*, 15 Cal. App. 710 [115 Pac. 945]. That was an action brought to recover taxes paid under protest. The property assessed was privately owned property on March 1, 1903. Thereafter, but before such assessment was levied, the city of Santa Monica acquired said property. The court held with the defendant in said action that the lien of said taxes attached on the first Monday in March of said year and that ''The plaintiff, when it acquired this land, took it subject to the lien for county purposes to the same extent as would a private purchaser.'' We can see but slight analogy between that case and the one now before us. In the case of the city of Santa Monica, it purchased the property after the taxes for the current year had become a lien thereon and said lien was not affected or destroyed by the property thereafter being devoted to public use. The property of the City of Inglewood, against which said special assessments were attempted to be levied, was purchased by said city and devoted by it to a public use prior to the 1st of March of the year in which said special assessment was levied and therefore before any lien for any assessment had attached thereto.

The next case relied upon by the respondent is *Nevada Nat. Bank* v. *Poso Irr. Dist.*, 140 Cal. 344 [73 Pac. 1056]. In that case it was held that land which was government land at the time of the organization of an irrigation district was no part of said district, and that a subsequent purchaser of said land from the government took said land free from any liability contracted or incurred by the district, including bonds of the district issued for the purpose of making improvements therein. Respondent insists that by the ruling in this case the status of an assessment district is determined at the date of its creation, and subsequent conveyances cannot alter it. We cannot agree with this contention. The grounds of said decision are as set

forth therein, that "if the grantee of the United States must take the land burdened with the liability of an irrigation district made to include it without the assent of the government or the purchaser, it attaches a condition to the disposal of the property of the government without its sanction or consent, and which must, in such cases, interfere with its disposal." According to the construction placed upon that decision by respondent, if, after the formation of said district, the government would decide to locate and build a postoffice therein, and should purchase for that purpose and construct a postoffice building upon a lot or parcel of land which was in private ownership at the time of the organization of said district, that said land and premises, even though belonging to the United States government and used by it as a postoffice, would be liable for all taxes and assessments that might thereafter be levied by said district. There is nothing in said decision to justify any such claim or contention. The case of *Lee* v. *Osceola Imp. Dist.*, 268 U. S. 643 [69 L. Ed. 1133, 45 Sup. Ct. Rep. 620], cited by respondent, contains nothing so far as we can perceive which is in any way helpful to respondent. That case cites, with approval, *Nevada Nat. Bank* v. *Poso Irr. Dist., supra,* and deals with the same question that was involved in that case, as will appear from the following brief statement from the opinion: "It was settled many years ago that the property of the United States is exempt by the Constitution from taxation under the authority of a state so long as title remains in the United States. (*Van Brocklin* v. *State of Tennessee*, 117 U. S. 151, 180 [29 L. Ed. 845, 6 Sup. Ct. Rep. 670].) This is conceded. It is urged, however, that this rule has no application after the title has passed from the United States, and that it may then be taxed for any legitimate purposes. While this is true in reference to general taxes assessed after the United States has parted with its title, we think it clear that it is not the case where the tax is sought to be imposed for benefits accruing to the property from improvements made while it was still owned by the United States." These are the principal authorities cited by the respondent in behalf of its contention that property in private ownership at the time of the creation of a district like one of the three districts mentioned herein remains liable for the payment of

all assessments thereafter levied by said district, notwithstanding the fact that said property was on the first Monday in March of the year in which said assessments were levied public property and exclusively devoted to public use. In our opinion there is nothing in any of these authorities which would justify us in holding that in considering the property within said districts liable for said special assessments, any distinction should be made between property which was public property at the time of the creation or organization of any of said districts and property which thereafter was acquired by a municipality and devoted by it to public use.

█ As we have already shown, public property of a municipality, that is, property owned by such municipality and by it devoted to public use, is liable for special assessments for public improvements only in case there is a positive legislative authority therefor. █ In none of the acts under which the three districts involved herein were created or organized is there to be found any such authority. It is true that in two of said acts it is provided that "all real property in the district shall be and remain liable to be taxed for such purposes," and in the other language equally effective is used in reference to the property in the district liable for such assessments. These are requirements which apply generally to property within the districts. █ But it is well settled that the state and its subordinate agencies, including municipal corporations, are not bound by general words used in a statute. This doctrine was expressly approved by this court in a recent decision, wherein the question, and the authorities applicable thereto, were exhaustively discussed and considered. (*C. J. Kubach Co.* v. *McGuire*, 199 Cal. 215 [248 Pac. 676].) The intention of the legislature in respect to making municipal property subject to the assessments levied for the purpose of maintaining said districts and of paying for the public improvements made therein is best determined by an inspection of the acts themselves providing for the creation and organization of said districts. When there is nothing in any of said acts, or in any other statute, which expressly or impliedly provides for the imposition of such liability upon municipally owned property, then it must be conclusively presumed that no intention existed in the

minds of the legislators at the time of the passage of said acts to authorize any tax or assessment upon such class of property. That such omission was intentional, we think, is further made apparent by reference to other acts of the legislature, the purpose of which was to provide for local improvements and the payment of the same by special assessments. We refer particularly to the Acquisition and Improvement Act of 1925 (Stats. 1925, p. 849), where the legislative body conducting proceedings under said act is expressly authorized to levy assessments for local improvements upon lands of a municipality. This authority is given under section 5 of said act, which provides that, "The lands upon which said special assessment taxes shall be based . . . shall include all lands belonging to any county, municipality," etc., provided said legislative body might omit any of such lands from the levy and collection of such assessment. The fact that authority to levy assessments against municipal property was expressly given in the Acquisition and Improvement Act of 1925, and was omitted from each of the three acts involved herein, is an additional circumstance going to show that the legislature never intended to authorize the levy of assessments against the public property of municipalities under any of said acts. This being so, the property owners in said several districts are conclusively presumed to have known the legal effect of said acts of the legislature and to have acted in the light of such knowledge at the time of the hearing when their lands were included in said districts and made liable for improvement assessments. Conceding that the assessments of the individual property owners in said districts have been increased by the withdrawal for assessment purposes of the property acquired by the City of Inglewood subsequent to the formation of said districts, yet this was but the legal consequence of the operation of the acts of the legislature under which said districts were organized, and of which the property owners were fully informed by the provisions of said acts. Their property is not, therefore, taken from them without a hearing and consequently they are not deprived of their property without due process of law.

The bondholders are in a similar position to that of the land owners, as shown above. They purchased the bonds of the several districts with full knowledge that the en-

abling acts under which the bonds were issued contained no provision authorizing the assessment of municipal property for the purpose of paying said bonds, or for any other purpose. In their behalf we will say that no complaint has come from any of said bondholders as far as the record in this case shows. The bondholders appear to be perfectly content with the situation as it is. Neither are the land holders in any of said districts making complaint regarding the exclusion of said public lands from assessments to pay for the improvements carried on in the several districts. The point is raised by the County of Los Angeles only; the respondent herein. But, conceding that respondent may properly raise the question, we are convinced that its position regarding the validity of the assessments involved herein is untenable and finds no support in the law of this state.

The judgment is reversed.

Waste, C. J., Seawell, J., Shenk, J., Langdon, J., and Richards, J., concurred.