[L.A. No. 32134. July 21, 1986.]

SAN MARCOS WATER DISTRICT, Plaintiff and Respondent, v.
SAN MARCOS UNIFIED SCHOOL DISTRICT,
Defendant and Appellant.

156

**COUNSEL**

Lynn R. McDougal, Patrick F. O'Connor and McDougal, Meloche, Love & Eckis for Defendant and Appellant.

James E. Holst, George L. Marchand, Christine Helwick, Allen B. Wagner, Ron Apperson and Ada R. Treiger as Amici Curiae on behalf of Defendant and Appellant.

Smith & Peltzer, Vernon A. Peltzer and Jeffrey G. Scott for Plaintiff and Respondent.

James K. Hahn, City Attorney (Los Angeles), Thomas C. Bonaventura, Senior Assistant City Attorney, John F. Haggerty, Assistant City Attorney, Arthur G. Kidman, David B. Cosgrove, Rutan & Tucker, Robert G. Boehm, City Attorney (Chico), George Agnost, City Attorney (San Francisco), and Patrick J. Sampson, City Attorney (Pomona), as Amici Curiae on behalf of Plaintiff and Respondent.

**OPINION**

**LUCAS, J.—**

### I. INTRODUCTION

Are utility fees for capital funding "special assessments" from which public entities are exempt, or "user fees" which public entities must pay? This case presents the question whether the San Marcos Unified School District (school district) is obligated to pay "sewer capacity right fees" (capacity fees) imposed by the San Marcos Water District (water district). The capacity fees are used by the water district to fund capital improvements. The school district argues that the capacity fee is a special assessment, and that school districts and other public entities are impliedly exempt from paying special assessments unless the Legislature directs otherwise. The water district argues that the capacity fee is not a special assessment, but

is a user charge which all utility users must pay. In the alternative, the water district argues that even if we hold that the capacity fee is a special assessment, it is legislatively authorized by either the Education Code or the Water Code. Finally, the water district maintains that the school district should be required by its water use contract or by the doctrine of promissory estoppel to pay the capacity fees imposed for the use of the sewer system.

We conclude that the trial court erred in finding that the school district is required to pay the sewer capacity fee. We believe that the capacity fee is an assessment which has not been authorized by the Legislature, and that the school district is not required by either contract or promissory estoppel to pay the capacity fee. Our conclusion does not mean that the water district cannot collect money for capital improvements from its customers; it simply means that the *private* customers will pay the entire cost of capital improvements. Public entities, such as the school district, will not be required to allocate their limited tax revenues to pay for capital improvements built by the sewer district.

## II. THE FACTS

This case was submitted to the trial court on November 15, 1983, as an "agreed case" as provided for in Code of Civil Procedure section 1138. Thus, the parties filed an agreed statement of facts and sought adjudication of their obligations concerning any payment of future fees or return of fees already paid. The facts which follow are derived from the agreed statement.

Both the water district and the school district are located in the San Marcos area of San Diego County. The territory of the school district is larger than that of the water district, but all currently used school sites are within the water district's sewer service area.

In 1971, the school district connected its facilities to the water district's sewer system. From 1971 to 1981, the school district paid three types of fees to the water district: connection fees, monthly service fees, and capacity fees. The water district imposed these fees pursuant to Health and Safety Code section 5471.[1] The connection fee is charged when the property is connected to the sewer system in order to pay for labor and materials involved

---

[1]This section provides in pertinent part: "Any entity shall have power, by an ordinance approved by a two-thirds vote of the members of the legislative body thereof, to prescribe, revise and collect, fees, tolls, rates, rentals, or other charges, including sewer standby or immediate availability charges, for services and facilities furnished by it, either within or without its territorial limits, in connection with its sanitation or sewerage system; . . ."

in making the new connection. The monthly service fee is based on the approximate amount of sewage discharged and is computed according to the number of students, faculty, and staff members assigned to the school. The capacity fee is a one-time fee for capital improvements paid at the time of connection; the capacity fee is based on *anticipated* sewage discharge. (The capacity fee charged is $2,400 for each 25 students and staff members assigned to the school.) If the population of a school increases, the water district on an annual basis can charge an additional capacity fee. The capacity fee is "a primary source of funds for the development of additional capacity and [is set] at a level which will defray the costs of providing additional sewage treatment and/or reclamation facilities; major trunk and transmission pipelines and facilities for pumping when such facilities are needed." (San Marcos Water District Ord. No. 47-6, art. X, § 4.)

Although the school district paid $59,750[2] in capacity fees from 1971 to 1980, beginning in 1981 the school district refused to pay the capacity fees, claiming to be exempt from such assessments. Litigation ensued and the trial court entered judgment on March 14, 1984, ruling that "the Education Code, particularly section 39613," provides the authority for imposing capacity fees upon the school district. In addition, the court found that Water Code section 31101.5, effective January 1, 1983, also provides authority for the water district to impose the capacity fees. Because the trial court based its ruling on the statutory authority for the capacity fee, the court impliedly found that the capacity fee is a special assessment requiring such authorization. The trial court ruled that the school district must pay to the water district "all amounts owing as capacity fees billed but unpaid together with interest at 7% per annum up to the time of Judgment and 10% per annum on said amount thereafter until paid."

### III. The Court of Appeal Opinion

Because this case came to us on a petition for review, we will review the Court of Appeal opinion. The Court of Appeal upheld the judgment, but its reasoning was different than that of the trial court. The appellate court did not reach the question whether there is legislative authority in the Education Code or the Water Code for the water district's capacity fee. The Court of Appeal found that no such authority was needed, because the capacity fee is not a special assessment, but rather a *user charge,* and as such the school district must pay the fee.

---

[2]Amicus Los Angeles Unified School District (LAUSD) notes that, with its population of over 690,000 students and employees, LAUSD would have to pay $66.24 million ($2,400 per 25 students and staff members) if it were charged an identical capacity fee.

The court declined to follow three California appellate decisions which had held that a local public utility which operates a sewer system cannot collect a fee, designed to defray the costs of future capital improvements, from public entities not subject to the property tax. (See *County of Riverside v. Idyllwild County Water Dist. (Riverside)* (1978) 84 Cal.App.3d 655 [148 Cal.Rptr. 650]; *Regents of University of California v. City of Los Angeles (Regents I)* (1979) 100 Cal.App.3d 547 [160 Cal.Rptr. 925], hg. den.; *Regents of University of California v. City of Los Angeles (Regents II)* (1983) 148 Cal.App.3d 451 [196 Cal.Rptr. 14], hg. den.) Instead, the Court of Appeal examined the differences between "assessments" and "user charges," and the manner in which several out-of-state cases treated similar situations. The court found that the weight of authority in the out-of-state cases was that a fee for capital improvements to a sewer system is a user fee, not an assessment. The court noted that *Associated Homebuilders v. City of Livermore* (1961) 56 Cal.2d 847 [17 Cal.Rptr. 5, 366 P.2d 448], held that a sewer charge for capital improvements imposed pursuant to Health and Safety Code section 5471 "does not constitute an assessment on the value of property . . . but rather is in the nature of an excise tax . . . ." *(Id.,* at p. 852.)

The Court of Appeal concluded that "The capacity fee does not constitute a special assessment for the purpose of the implied exemption [from paying such assessments] because it is not assessed against all property benefited by the sewer system but is only imposed on users of the system whose use gives rise to the need for additional sewer capacity." Because the school district is not exempt from paying "user fees," the Court of Appeal held that it must pay the capacity fees at issue here.

In a dissenting opinion, Acting Presiding Justice Staniforth asserted that the majority should have followed the three California appellate decisions previously cited. He believed that, based on California law, the capacity fee is a special assessment which has not been positively authorized by the Legislature in either the Education Code or the Water Code. He also rejected the water district's argument that the school district is bound by contract or promissory estoppel to pay the capacity fees. Because a public entity which is exempt from property taxes is also impliedly exempt from "special assessments" not expressly authorized by the Legislature, the dissent found that the school district should not have to pay the capacity fees.

IV. DISCUSSION

A. *Special Assessment or User Charge?*

Article XIII, section 3, subdivision (b), of the California Constitution provides that property owned by public entities such as the school district

is exempt from property taxation. Courts have held that such property is likewise impliedly exempt from "special assessments." ■ "While publicly owned and used property is not exempt from special assessments under the constitution or statutory law of this state, there is an implied exemption of such property from burdens of that nature . . . . The principle which makes property of the state . . . nontaxable . . . also precludes the imposition of a special assessment for a street or other local improvement upon such property, unless there is a positive legislative authority therefor. [Citations.]" (*Inglewood* v. *County of Los Angeles* (1929) 207 Cal. 697, 703-704 [280 P. 360].)

The rationale behind a public entity's exemption from property taxes and special assessments is to prevent one tax-supported entity from siphoning tax money from another such entity; the end result of such a process could be unnecessary administrative costs and no actual gain in tax revenues. (*Eisley* v. *Mohan* (1948) 31 Cal.2d 637, 642 [192 P.2d 5].) On the other hand, when one tax-supported entity provides goods or services to another, neither the California Constitution nor decisional law exempts the public entity from paying for these goods or services.

■ Although both parties agree that the school district is exempt from special assessments unless there is contrary legislative authority, the parties disagree as to whether the challenged capacity fee is a special assessment. The water district and its amici argue that the capacity fee does not have the characteristics of an assessment, but rather those of a usage fee. For example, the amount of the capacity fee is based on anticipated usage, not the value of the benefit to the property. The capacity payment is "voluntary"—in the sense that it is the payer's solicitation and utilization of the sewage service which triggers the charge. As such, the capacity fee must be paid by the school district as well as by all other users of the sewer system. The school district and its amici urge the court to reach the same conclusion as did the courts in *Riverside, Regents I,* and *Regents II:* a fee used to provide funds for capital improvements to sewer facilities, rather than simply to cover ongoing costs of service, is a special assessment, even if the amount of the fee is based on actual or anticipated usage.

What is a special assessment? ■ "[A] special assessment is not, in the constitutional sense, a tax at all. It is 'a compulsory charge placed by the state upon real property within a pre-determined district, made under express legislative authority for defraying in whole or in part the expense of a permanent public improvement therein . . . .'" (*Spring Street Co.* v. *City of Los Angeles* (1916) 170 Cal. 24, 29.) The court in *Solvang Mun. Improvement Dist.* v. *Board of Supervisors* (1980) 112 Cal.App.3d 545 [189

Cal.Rptr. 391], discussed the difference between a property tax and a special assessment: "An ad valorem tax on real property describes a general tax levy which applies a given rate to the assessed valuation of all taxable property within a particular taxing district. Such is the tax levied by a county to pay for general expenditures, such as fire and police protection, and for general improvements, such as fire stations, police stations, and public buildings, which are deemed to benefit all property owners within the taxing district, whether or not they make use of or enjoy any direct benefit from such expenditures and improvements . . . . In contrast, a special assessment, sometimes described as a local assessment, is a charge imposed on particular real property for a local public improvement of direct benefit to that property, as for example a street improvement, lighting improvement, irrigation improvement, sewer connection, drainage improvement, or flood control improvement. . . . This view makes a clear distinction between taxes, which are levied for general revenue and for general public improvements; and special assessments, which are levied for local improvements which directly benefit specific real property." (*Id.,* at pp. 552-553.)

The Court of Appeal in the instant case described the average special street assessment as a *typical* special assessment. The assessment is a one-time charge. "The cost of paving a street is assessed against all abutting property owners in proportion to the amount of property fronting on the street. The assessment is involuntary (a property owner cannot refuse to have the street in front of his house paved) and unrelated to actual use of the paved street (a similarly situated property owner with no vehicles is assessed by the same as one with several)."

In contrast to a special assessment, a usage fee typically is charged only to those who use the goods or services. The amount of the charge is related to the actual goods or services provided to the payer. The usage fee for an ongoing service would normally be a monthly charge rather than a one-time charge.

In its opinion, the Court of Appeal pointed out that Health and Safety Code section 5471, enacted in 1945, authorizes the collection of "fees, tolls, rates, rentals, or other charges" for services *and* facilities furnished by the water district. The court found it significant that the Legislature did not include the word "assessments" in the list, and concluded that the Legislature understood that a user charge does not become a special assessment merely because it is used for capital improvements.

We do not find the absence of the word "assessments" to be convincing evidence that the Legislature would not consider fees for capital improve-

ments to be special assessments. Amicus University of California, supporting the school district, points out that the state and its agencies are not bound by general words used in a statute (*Inglewood* v. *County of Los Angeles, supra,* 207 Cal. 697, 707) unless compliance with that statute would result in no impairment of sovereign powers. (*Hoyt* v. *Board of Civil Service Commrs.* (1942) 21 Cal.2d 399, 402 [132 P.2d 804].) In this case, according to amicus, such an impairment could occur, because the charges necessary to fund local capital improvements to the sewer district would reduce the resources which the school district may use to perform its other functions. (*County of Santa Barbara* v. *City of Santa Barbara* (1976) 59 Cal.App.3d 364, 369 [130 Cal.Rptr. 615].)

The Court of Appeal concluded that the capacity fee in the instant case is a *hybrid:* "The capacity fee thus has some characteristics which resemble a special assessment (one time charge; not based on actual use) and some which look more like a user charge (charge only applies to users; based on anticipated use)." ■■■ We agree that the capacity fee is a hybrid, but we conclude we should follow the three prior appellate opinions which held that a similar fee is a special assessment. These opinions established a rule which looks to the *purpose* of the fee being charged, and not simply to the *form* of the fee, a matter which can be easily manipulated.

In *Riverside,* a water district attempted to collect a "capital cost sewer capacity charge" from all tax-exempt entities. The county refused to pay, contending the charge was invalid. The *Riverside* court held that "unless the Legislature expressly so authorizes, property publicly owned and used is exempt from special assessments. [Citations.] The imposition of a capital cost charge on tax exempt entities was a means of making such entities contribute a proportionate share of the cost of constructing the district's sewerage facilities. *The charges are in effect a special assessment under a different name* and constitute an attempt by the district to do indirectly that which it could not do directly. [Citations.]" (Italics added, *Riverside, supra,* 84 Cal.App.3d 655, 659-660.)

In *Regents I,* the Regents of the University of California challenged a "sewage facilities charge" imposed by the City of Los Angeles on all *users* of the city sewer system. (The Regents did not dispute a connection charge and a monthly service charge which were also imposed.) The court stated that "although the amount of the 'sewage facilities charge' is based upon anticipated use of the sewer system by the user, the collected revenues are not used to defray the costs of providing sewer service to the users. Such costs are funded through the 'sewer connection charge' and the 'monthly sewer service charge,' charges whose payment the Regents do not dispute.

Rather, the revenues collected as a result of the 'sewage facilities charge' are used by the city to provide capital for sewer construction, i.e. to finance local improvements. *Such a charge for capital funding is little more than a disguised special assessment.* [Citation.]" (Italics added, *Regents I, supra,* 100 Cal.App.3d 547, 549-550.) The court concluded that, although it might be more fair if the Regents were required to pay their share of the capital costs of local improvements whose benefits they enjoy, the court had no authority to modify the tax-exempt status of the university.

Following *Regents I,* the City of Los Angeles amended its municipal code to increase its sewer service charge. The new charge included a portion for capital funding and was based on *actual* rather than *anticipated* use. The Regents nonetheless refused to pay the portion of the service charge that was earmarked for capital improvements. The Court of Appeal in *Regents II, supra,* 148 Cal.App.3d 451, rejected the city's argument that this new charge differed from the one in *Regents I* because it was based on actual use. The court held that "The *Regents* test is the *purpose* of the disputed charge. [Citation.] [¶] Nor does the method of calculating the charge define its nature. Whether the charge is a one time occurrence or a monthly assessment is irrelevant to the purpose for which the collection is made. The character of the assessment is also not affected by the fact that the sewer service charge is unrelated to property value. [Citation.]" (*Id.,* at p. 455.)

The Court of Appeal in the instant case found that the capacity fee at issue is a user charge because it was charged only to *users* of the sewer system rather than being assessed to all property owners in the district. Although the courts in *Riverside, Regents I,* and *Regents II* did not analyze this factor, we suggest that charging users rather than property owners is a factor as easily manipulated as is the method of computing the fee.

In *Regents I* and *Regents II,* the capital improvements charge was assessed only to users of the sewer system, yet the courts found the charge to be an assessment. By placing the emphasis on the *purpose* of the charge, the courts in those cases created a rule which both conforms to the policy behind the implied exemption for public entities, and avoids easy manipulation. A contrary ruling would, in effect, abrogate the public entities' implied exemption from assessments by sewer districts. Under the rule we adopt, no matter how the *form* of the fee is varied (i.e., whether based on actual or anticipated use, or unrelated to use; whether a one-time fee or monthly fee; and whether charged to all property owners or only to users of the sewer system), the *purpose* of the fee will determine whether or not public entities are exempt from paying the fee. In sum, a fee aimed at assisting a utility

district to defray costs of capital improvements will be deemed a special assessment from which other public entities are exempt.

Amicus University of California points out that the 5,244 special districts in California are responsible for most of the basic infrastructure systems which are vital to our economy. Costs for these special districts often exceed revenues and the districts frequently need more money. Rather than allowing these essentially local special districts to determine that public entities should contribute to their capital improvements, however, we believe that the Legislature should evaluate statewide needs and allocate funds accordingly. Thus, a state agency is responsible for paying a special assessment such as the instant capacity fee only when the Legislature authorizes such payment.

B. *Legislative Authority for the Capacity Fee*

The water district and its amici argue that even if we find that the capacity fee is a special assessment from which public entities ordinarily would be impliedly exempt, there is legislative authority, in either the Education Code or the Water Code, for requiring the school district to pay the challenged assessment. We will examine these codes separately.

1. *The Education Code*

Education Code section 39613[3] permits a school district to construct its own sewer system or acquire "rights" in sewer systems constructed by others. The water district contends that this section provides express legislative authorization for its capacity fee. We disagree.

The water district's argument is that because the section permits the school district to build its own sewer system or acquire rights in another system, and to pay for such projects with money from the district's building fund (which is used for funding capital improvements), therefore this section implicitly authorizes the school district to pay an *assessment* imposed on it by the water district. But if the Legislature intended school districts to be subject to special assessments for sewer systems, it undoubtedly would have

---

[3]This section provides: "In addition to the other powers granted the governing board of each school district may provide sewers and drains adequate to treat and/or dispose of sewage and drainage on or away from each school property. For this purpose it may construct adequate systems or acquire adequate disposal rights in systems constructed or to be constructed by others for these purposes without regard to their proximity. The cost thereof may be paid from the building fund, including any bond moneys therein."

said so directly. For example, Education Code section 39609[4] *expressly* authorized school districts to "appropriate money to pay assessments, for the improvement of streets or other public places." By contrast, Education Code section 39613 contains no reference whatsoever to assessments.

The predecessor of Education Code section 39613 was enacted as an urgency measure in 1950 to allow school districts to use building funds to construct sewer systems either alone or in conjunction with others, without regard to the proximity of the systems. According to section 39613, a school district can build its own sewer system or acquire ownership rights in a system built with others. In addition, Education Code section 39011[5] authorizes or requires a school district to pay for the installation costs when contracting with a water district for sewer service. Neither statute authorizes or requires a school district to appropriate money to pay special assessments. As we have previously explained, a special assessment may not be imposed on property belonging to a public agency absent *express* legislative authorization. (*Riverside, supra,* 84 Cal.App.3d at pp. 659-660.)

## 2. *The Water Code*

The water district next argues that section 31101.5 of the Water Code, which became effective in 1983, authorizes the water district to levy a special assessment for capital improvements upon the school district. Section 31101.5 states: "A district may supply sewage and waste services to property not subject to district taxes at special rates, terms, and conditions as are determined by the board for the services." But this section uses the word "services"; it does not mention *assessments* and it does not mention *fees for capital improvements*. It simply allows water districts to set rates for public agencies that are different than the rates for private customers.

---

[4]This section provides: "The governing board of any school district may appropriate money to pay assessments, for the improvement of streets or other public places, levied against any real property owned by, or under the control of the board, when the property is included within an assessment district formed in pursuance of any general law of the state or under the charter of any municipality. The assessments may be paid out of any funds belonging to the school district, except funds derived from the sale of bonds or required by law to be used for teachers' salaries."

[5]This section provides in pertinent part: "Where a city, district, or other political corporation or subdivision of the state is authorized by law to furnish sewerage, water or other utility facilities to a school district and is not required to provide for the installation thereof to such school district at its own expense, it may enter into an agreement with such school district whereby the cost of installation will be paid by the school district under such terms as the parties may agree to, with reimbursement from charges made or to be made to other users of such facilities as may be agreed upon between the parties, save insofar as other provisions of law control the terms of such reimbursement."

Other sections of the Water Code cited by the water district likewise provide no authority for assessing property owned by public agencies. Section 31100 gives water districts the right to contract with public agencies. Section 31101 permits water districts to charge for services and facilities. None of these sections provides the express authority that is required for imposing a special assessment on a public entity.

## C. *Payment Not Required by Contract or Promissory Estoppel*

■ Finally, the water district points out that the school district had a choice of constructing its own sewer system or contracting with another agency to provide the service. Because the school district has voluntarily elected to connect its schools to the water district's system, the school district should be required by contract to pay all fees, including the capacity fee. It is uncontested, of course, that the school district is required to pay the water district connection fee and the monthly service fee. But because we believe the capacity fee is a special assessment, it is not a fee that the school district can agree by contract to pay. According to *Riverside, supra,* 84 Cal.App.3d at page 659, "whether the [school district] can agree to pay the charge depends upon whether the [water] district has the power to impose it." Because the water district does not have the power to impose the capacity fee here, if the school district pays the invalid charge it would amount to a "gift of public funds in contravention of article XVI, section 6 of the California Constitution." (*Id.,* at p. 660.)

■ The water district alternatively urges us to hold that the doctrine of promissory estoppel applies to require the school district to pay the capacity fee. Here, the school district (1) promised to pay the capacity fee upon first being allowed to connect to the water district's sewer system, and (2) furthermore paid the capacity fees for 10 years before claiming an exemption. The water district contends that the school district is accordingly estopped from denying the obligation to pay the capacity fee.

In *City of Long Beach* v. *Mansell* (1975) 3 Cal.3d 462 [91 Cal.Rptr. 23, 476 P.2d 423], we stated that it is a "well-established proposition that an estoppel will not be applied against the government if to do so would effectively nullify 'a strong rule of policy, adopted for the benefit of the public, . . . .' [Citation.]" (*Id.,* at p. 493.) Public entities are exempt from property taxes and special assessments in order to preserve the balance in funding established by the Legislature and to avoid unnecessary administrative costs. (See *Eisley* v. *Mohan, supra,* 31 Cal.2d 637, 642.) Because we believe that the implied exemption against special assessments on prop-

erty owned by public agencies is indeed a "strong" public policy, the doctrine of promissory estoppel is not applicable to this case.

## D. *The "Special Tax" Issue*

The school district had argued that even if the capacity fee is not deemed a special assessment, the fee is not reasonably related to the cost of the service for which it is imposed within the meaning of Government Code section 50076.[6] Therefore, according to the school district, the capacity fee is a "special tax" which would require a two-thirds voter approval to be valid under article XIII A, section 4 of the California Constitution.

The school district raised this argument for the first time on appeal and the water district had no opportunity to make a record on this issue. Although we do not find it necessary to reach it because we hold the capacity fee is a special assessment, we agree with the Court of Appeal's statement that the issue was untimely raised. Because the issue of reasonable relationship is largely factual (see *Beaumont Investors* v. *Beaumont-Cherry Valley Water Dist.* (1985) 165 Cal.App.3d 227, 234-235 [211 Cal.Rptr. 567]), the appellate court's refusal to examine this issue was correct.

## V. Conclusion

Because the capacity fee is a special assessment which has not been authorized by the Legislature, we hold that the school district is not required to pay the fee. The judgment of the Court of Appeal is reversed. As for capacity fees that were paid by the school district from 1971 to 1980, this matter is remanded to the Court of Appeal for further proceedings to determine whether those fees must be refunded.

Mosk, J., Broussard, J., Reynoso, J., and Panelli, J., concurred.

**GRODIN, J.,** Concurring.—It is not entirely clear to me—nor was it to the Court of Appeal—why a fee which is based upon an estimate of prospective use is a "special assessment" rather than a "user fee" because its purpose is to fund capital improvement. I agree with the majority, however, that we should defer to the now well-established precedent to that effect

---

[6]"As used in this article, 'special tax' shall not include any fee which does not exceed the reasonable cost of providing the service or regulatory activity for which the fee is charged and which is not levied for general revenue purposes."

and invite the Legislature, if it sees fit, to establish a different rule. On that basis, I concur.

Bird, C. J., concurred.

Respondent's petition for a rehearing was denied August 28, 1986.