Filed 3/10/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| LOS ANGELES LEADERSHIP ACADEMY, INC., et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> JEFFREY PRANG, as Assessor, etc., et al., <br><br> Defendants and Respondents. | B292613 <br><br> (Los Angeles County Super. Ct. No. BC599466) |

APPEAL from a judgment of the Superior Court of Los Angeles County. Monica Bachner, Judge. Affirmed.

Bird, Marella, Boxer, Wolpert, Nessim, Drooks, Lincenberg & Rhow, Thomas R. Freeman, A. Howard Matz, Hernan D. Vera and Fanxi Wang for Plaintiffs and Appellants.

Charter Schools Legal Defense Fund, Julie Ashby Umansky for California Charter Schools Association as Amicus Curiae on behalf of Plaintiffs and Appellants.

Glaser Weil Fink Howard Avchen & Shapiro, Joel N. Klevens; Mary C. Wickham, County Counsel, Nicole Davis Tinkham and Justin Y. Kim, Deputy County Counsel, for Defendants and Respondents.

———————————————

# SUMMARY

Los Angeles Leadership Academy, Inc. is a nonprofit charter school that operates on property owned by two related nonprofit public benefit corporations. The three entities sued the Assessor of the County of Los Angeles and others for a refund of property taxes and special assessments, and for declaratory relief that they have no obligation to pay such taxes and assessments so long as the properties are held for the benefit of the school and its operation.

According to plaintiffs, the threshold question on this appeal is whether a nonprofit charter school should be treated as a public school district for purposes of applying the implied exemption, which they contend exempts public schools from having to pay both taxes and special assessments. Under the implied exemption doctrine, school districts are exempt from having to pay special assessments on properties used for public school purposes. The California Constitution expressly exempts public schools from having to pay *taxes*, and the courts have found public schools are impliedly exempt from having to pay *special assessments*. But there is no such thing as an implied exemption from taxation.

The trial court rejected plaintiffs' claims and entered judgment for defendants after a court trial. We find no support in statutory or case law for plaintiffs' implied exemption claim. Plaintiffs cannot establish that charter schools are public entities for purposes of exemption from taxation. Plaintiffs' policy arguments to the contrary—that charter schools should be treated like public entities because monies taken for taxes and special assessments reduce monies available for educating students, and put charter schools at a competitive disadvantage

2

with other public schools—are properly addressed to the Legislature, not to this court.

The judgment is affirmed.

## FACTUAL AND LEGAL BACKGROUND

We begin with pertinent legal principles and facts that illuminate our conclusions.

### 1. Background Legal Principles

Property owned by the state or a local government is exempt from taxation under the California Constitution. (Cal. Const., art. XIII, § 3, subds. (a) & (b).) That includes, of course, property owned by a school district. (*San Marcos Water Dist. v. San Marcos Unified School Dist.* (1986) 42 Cal.3d 154, 160-161 (*San Marcos*) [the state Constitution "provides that property owned by public entities such as the school district is exempt from property taxation"].)

Taxes and special assessments are two different things. " '[T]axes . . . are levied for general revenue and for general public improvements; and special assessments . . . are levied for local improvements which directly benefit specific real property.' " (*San Marcos, supra,* 42 Cal.3d at p. 162.)

Publicly owned and used property " 'is not exempt from special assessments under the constitution or statutory law of this state.' " (*San Marcos, supra,* 42 Cal.3d at p. 161.) There is, however, " 'an implied exemption' " of publicly owned and used property from special assessments. (*Ibid.*) " 'The principle which makes property of the state . . . nontaxable . . . also precludes the imposition of a special assessment for a street or other local improvement upon such property, unless there is a positive legislative authority therefor.' " (*Ibid.,* quoting *Inglewood v. County of Los Angeles* (1929) 207 Cal. 697, 703-704 (*Inglewood*);

3

*Regents of the University of California v. East Bay Municipal Utility Dist.* (2005) 130 Cal.App.4th 1361, 1368 (*East Bay*) ["From that constitutional exemption, California courts have implied a further exemption of such property from special assessments, absent legislative authorization."].)  "The rationale behind a public entity's exemption from property taxes and special assessments is to prevent one tax-supported entity from siphoning tax money from another such entity; the end result of such a process could be unnecessary administrative costs and no actual gain in tax revenues."  (*San Marcos,* at p. 161.)

2.      **Factual Background**

It is undisputed that plaintiffs' property *is* exempt from taxation under the constitutional provision that exempts property used exclusively for public schools (Cal. Const., art. XIII, § 3, subd. (d)).  This exemption, however, does not apply to the pre-occupancy property taxes and special assessments that plaintiffs seek to recover.

It is unnecessary to dwell at length on the facts that led to this litigation.  The Academy is a nonprofit public benefit corporation that operates two charter schools in the Lincoln Heights neighborhood.  It recruits students from communities with high concentrations of families living below the poverty line.

The Academy's schools are located on properties owned by two other nonprofit public benefit corporations (2670 Griffin Education Center, Inc. and Florence Crittenton Center, Inc.). The Academy describes itself as the beneficial owner of the properties; the ownership structure was necessary so that the Academy would remain eligible for significant subsidies available for charter schools that rent the facilities in which they operate. (Ownership of the properties was an issue at trial, but our

4

resolution of the appeal makes it unnecessary to consider the parties' contentions on this point.)

In March 2015, plaintiffs sought a refund of $222,942.10 in property taxes and special assessments.[1]  In May 2015, the assessor denied the claim.  Plaintiffs then filed this lawsuit seeking the refund, and also seeking a declaration that defendants may not assess or collect any taxes from the Academy that are not assessed or collected from traditional public schools.

As stated at the outset, the trial court found charter schools are not public entities for purposes of exemption from taxation. The court entered a final judgment on July 26, 2018, and plaintiffs filed a timely appeal.[2]

## DISCUSSION

The substance of plaintiffs' argument is that since a charter school is deemed to be a "school district" for specific funding laws

---

[1]     The refund sought includes "[v]oter indebtedness" or "bonded indebtedness"; defendants treat bonded indebtedness like special assessments for exemption purposes.

[2]     Both parties have filed unopposed requests for judicial notice.  Plaintiffs request judicial notice of two reports prepared by the Legislative Analyst's Office that were noticed by the trial court.  Plaintiffs contend these reports "provide[] context for discerning the Legislature's intent to provide charter schools with funding equal to that of traditional private schools."  We grant the request, but note there is no dispute that charter schools are eligible for state and local funding equally with other public schools.  Defendants request judicial notice of certain administrative filings by the California School Finance Authority, and publications by California agencies and the IRS, which they say show that the Charter Schools Act treats charter schools

5

(Ed. Code, § 47612, subd. (c)), so too it must be treated as a school district entitled to the implied exemption from taxation.

In addition to plaintiffs' misconception of the implied exemption principle, their claim has no statutory support and no support in case law either. And no legislative history is offered to suggest the Legislature intended, without saying so, to treat charter schools like school districts or other public entities for taxation purposes.

Charter schools and school districts are treated differently in many ways, some of them with substantial financial ramifications. Plaintiffs' arguments are quintessentially policy arguments, and should be directed to the Legislature.

## 1.     The Charter Schools Act

We begin with background on the Charter Schools Act (CSA, Ed. Code, § 47600 et seq.). Justice Baxter described the statute in *Wells v. One2One Learning Foundation* (2006) 39 Cal.4th 1164 (*Wells*). The CSA "is intended to allow 'teachers, parents, pupils, and community members to establish . . . schools that operate independently from the existing school district structure.' (Ed. Code, § 47601.) By this means, the CSA seeks to expand learning opportunities, encourage innovative teaching methods, provide expanded public educational choice, and promote educational competition and accountability within the public school system. [Citation.] [¶] If statutory requirements are met, public school authorities must grant the petition of interested persons for a charter to operate such a school within a public school district." (*Wells,* at p. 1186.)

---

differently from traditional public schools with respect to a variety of expenses. We likewise grant this unopposed request.

6

"For certain purposes, the [charter] school is 'deemed to be a "school district" ' [citation], is 'part of the Public School system' [citation], falls under the 'jurisdiction' of that system, and is subject to the 'exclusive control' of public school officers [citations]." (*Wells, supra,* 39 Cal.4th at p. 1186.)  "A charter school must operate under the terms of its charter, and must comply with the CSA and other specified laws, but is otherwise exempt from the laws governing school districts." (*Ibid.,* citing Ed. Code, § 47610.)  "A charter school may elect to operate as, or be operated by, a nonprofit corporation organized under the Nonprofit Public Benefit Corporation Law." (*Wells,* at p. 1186.)  "A charter school is eligible for its share of state and local public education funds, which share is calculated primarily, as with all public schools, on the basis of its [average daily attendance]." (*Ibid.*)

In addition, Justice Baxter described the relationship between charter school operators and their chartering districts. That description is pertinent here.  "Though charter schools are deemed part of the system of public schools for purposes of academics and state funding eligibility, and are subject to some oversight by public school officials [citation], the charter schools here are *operated*, not by the public school system, but by distinct outside entities—which the parties characterize as nonprofit corporations—that are given substantial freedom to achieve academic results free of interference by the public educational bureaucracy." (*Wells, supra,* 39 Cal.4th at pp. 1200-1201; see *id.* at p. 1201 ["The autonomy, and independent responsibility, of charter school operators extend, in considerable degree, to financial matters."].)

In *Wells,* the court rejected the charter schools' insistence that, by virtue of the CSA, they were "entitled to any 'public entity' immunity enjoyed by their chartering districts." (*Wells, supra,* 39 Cal.4th at p. 1200.) *Wells* held that public school districts are not persons who could be sued under the California False Claims Act (Gov. Code, § 12650 et seq.), but that charter schools and their operators *are* persons subject to suit under that law, and were *not* exempt "merely because such schools are deemed part of the public school system." (*Wells,* at p. 1179.) While the Legislature did not intend to undermine the school district's sovereign obligation to provide a free public education "by exposing public school *districts* to the harsh monetary sanctions" of the False Claims Act, "the CSA assigns no similar sovereign significance to charter schools or their operators." (*Wells,* at p. 1201.) The court also rejected the contention that the charter school defendants were entitled to the "public entity" exemption from the unfair competition law. (*Id.* at pp. 1203-1204.)

## 2.     Contentions and Conclusions

*Wells* establishes that charter schools are operated "by distinct outside entities"; the CSA assigns "no . . . sovereign significance to charter schools or their operators"; and "[e]xcept in specified respects," charter schools are exempt from the laws governing school districts. (*Wells, supra,* 39 Cal.4th at p. 1201.) In other words, the Legislature has specified precisely how, and to what extent, and under which statutory provisions charter schools are deemed to be part of the system of public schools, or "deemed to be a 'school district' " (Ed. Code, § 47612, subd. (c)). Notably absent is any suggestion that charters schools are to be treated like school districts for taxation purposes.

Nonetheless, plaintiffs contend that "charter schools, like school districts, are impliedly exempt from property taxes and special assessments on property used for public education purposes." As we observed earlier, this claim is unsupported by any pertinent legal authority and rests upon an erroneous reading of the case law on the "implied exemption," all of which refers to a public entity's implied exemption from special assessments, not from property taxes.

School districts are not "impliedly exempt" from property taxes; they are expressly exempt from property taxes under the Constitution. (Cal. Const., art. XIII, § 3, subd. (b); *San Marcos, supra,* 42 Cal.3d at pp. 160-161.) School districts are impliedly exempt from special assessments, as stated in *San Marcos.* (42 Cal.3d at p. 161.) This implied exemption from special assessments flows from the express constitutional exemption from property taxation. (*Ibid.*; *East Bay, supra,* 130 Cal.App.4th at p. 1368.)

Plaintiffs create their claim of an implied exemption from property taxation by referring to 19th century cases predating the 1879 express constitutional exemption of government-owned property from property taxation. (*People v. McCreery* (1868) 34 Cal. 432; *People v. Doe G. 1,034* (1868) 36 Cal. 220. These cases do not discuss an "implied exemption" from property taxes, nor do they involve special assessments. These cases simply point out the "meaning of taxation" and refer to the "absurdity" of the State taxing itself. (*McCreery,* at p. 456 [taxes are charges "levied by the sovereign power upon the property of its subject," and "not a charge upon its own property"]; *Doe G.,* at p. 223 [same]; *id.* at p. 222 ["Revenue is the object of taxation, and none would result from the State's taxing its own property."].) Neither

9

case refers to this principle as an "implied exemption" from taxation.

Then, the 1879 Constitution was adopted, and expressly provided that property belonging to the state or any county, city or municipal corporation was exempt from taxation. This express constitutional exemption has existed for 140 years. Plaintiffs' suggestion that there is also a separate, implied exemption from taxation, has no legal authority to support it. All the case law referring to an implied exemption refers to an implied exemption of publicly owned property from special assessments.[3]

The first reference to the "implied exemption" principle in the cited cases occurred in 1895, and involved an assessment by an irrigation district on city-owned lands. (*San Diego v. Linda Vista Irrigation Dist.* (1895) 108 Cal. 189 (*San Diego*).)[4] All other

---

[3] Plaintiffs erroneously describe a later 19th century case (*Witter v. Mission School District* (1898) 121 Cal. 350) as though it discussed "the implied exemption against any form of the taxing power." It did not. *Witter* involved a statute imposing a sidewalk assessment that had no exceptions, and concluded that land belonging to school districts was liable for assessments for improvements only if it was not used for school purposes. (*Id.* at pp. 351-352.)

[4] Plaintiffs misrepresent *San Diego* when they assert that the court "considered the implied exemption, *which applies to property taxes* as well as special assessments." (Italics added.) The court said nothing of the sort. The court quoted the constitutional exemption from property taxes (108 Cal. at p. 192), observed that an assessment was not a tax (*id.* at p. 193), said there was "no *express exemption* of any property *from local assessments*" (*id.* at p. 194, second italics added), and concluded that "implied exemptions [from local assessments] should not be

10

discussions of an "implied exemption" refer to an implied exemption from special assessments. (*San Marcos, supra,* 42 Cal.3d at p. 161; *Inglewood, supra*, 207 Cal. at pp. 703-704; *East Bay, supra,* 130 Cal.App.4th at pp. 1368-1369.)

In short, all plaintiffs' contentions about an implied exemption from property taxation are entirely inapt.

That leaves us with the contention that requiring plaintiffs to pay the challenged taxes and assessments "violates . . . legislative intent under the CSA." For the most part, this argument relies on the unfounded claims about the implied exemption doctrine, and to that extent requires no further discussion. The substance of the claim is that the CSA's express mandate that charter schools are to receive the same per-student funding as school districts should be construed to require charter schools to be exempt from taxation and special assessments to the same extent as school districts. There is no legal authority for that conclusion.

Plaintiffs correctly point out that charter schools are treated as public school districts for some purposes but not for others. But those purposes—funding and academics—are specified in the CSA, and nothing in the CSA suggests that charter schools are to be treated as public school districts for taxation purposes. The pertinent case authorities involve claims that a charter school should be treated like a school district for purposes of some other statute, such as the False Claims Act in *Wells*. And in those cases, the charter school was *not* treated as a school district.

extended to property which is not held or used for municipal or governmental purposes" (*id.* at p. 196).

11

For example, plaintiffs cite *Gateway Community Charters v. Spiess* (2017) 9 Cal.App.5th 499. There, the court held a charter school was not an "other municipal corporation" under Labor Code section 220, subdivision (b), which exempts such corporations from certain Labor Code provisions, including payment of waiting time penalties. (*Gateway,* at pp. 507-508.) *Gateway* rejected the charter school's claim it should be exempt from the penalties because those penalties would reduce the funds available to educate. (*Id.* at p. 508.) "Such policy arguments are best left to the Legislature to decide. [Citation.] Our role is merely to interpret the statute as written, not to establish policy. [Citation.] If the Legislature desires to exempt charter schools from the waiting time penalties, it can do so." (*Ibid.*; see also *Knapp v. Palisades Charter High School* (2007) 146 Cal.App.4th 708, 710 [charter school is not a "public entity" under the Government Claims Act].)

In short, there is no doubt that charter schools "are eligible equally with other public schools for a share of state and local education funding." (*Today's Fresh Start, Inc. v. Los Angeles County Office of Education* (2013) 57 Cal.4th 197, 206.) That is because the CSA says so. But it would be a leap of major proportions to conclude that the Legislature's intent to provide charter schools with equal operational funding to that of school districts (Ed. Code, § 47630) somehow means charter schools are entitled to a public entity's exemption from taxation and its implied exemption from special assessments. We see no basis for reaching that conclusion.

Plaintiffs say we should not rely on cases like *Wells* and *Gateway* because they involve "wrongdoing" by charter schools. We do not see what that has to do with the principles applied in

12

those cases.  The cases do not in any event support the proposition that charter schools should be treated as school districts for taxation purposes.

Finally, the law is clear that "public benefit corporations are not public entities."  (*Hagman v. Meher Mount Corp.* (2013) 215 Cal.App.4th 82, 88.)  That term—public entities—"is defined . . . throughout the California codes," and "[i]n every instance, the entities listed as public entities—from traditional bodies like counties and cities to more recent innovations like public authorities and public corporations—have one thing in common: Each is vested with some degree of sovereignty."  (*Ibid.*)  A charter school has *no* sovereign authority, as plaintiffs necessarily concede.  That being so, the charter school's property is not exempt from property taxation under the constitutional exemption for property owned by the State or a local government, nor is such property impliedly exempt from special assessments.

## DISPOSITION

The judgment is affirmed.  Defendants shall recover their costs on appeal.


GRIMES, J.


WE CONCUR:

BIGELOW, P. J.


WILEY, J.


13