OPINION OF THE COURT
Thomas J. Murphy, J.
By this action plaintiffs and plaintiffs-intervenors, all of which are religious corporations and owners of church buildings located in the downtown area of Syracuse, are seeking to recover assessments imposed on their properties, which are included in a special assessment district of the city, and paid by them under protest. They also seek a declaration that the assessments are illegal and void.
Chapter 405 of the Laws of 1975 is the enabling act under which the ordinances imposing the special assessments were *201 adopted by the Common Council in August 1975 and February and May 1976. Section 2 of the State legislation authorized the creation by city ordinance of a special assessment district in Syracuse and specified powers with respect to the district that the ordinance might confer on the city. Included in these were the construction of various specific structures which might be regarded as capital improvements as that term is normally used, as well as the construction of facilities, the provision for additional maintenance or police personnel or both, and "such other powers as may be necessary to carry out the improvement, maintenance and operation of the special district”. (L 1975, ch 405, § 2 [B].)
After requiring that the ordinance describe the properties to be included in the special assessment district, subdivision (A) of section 3 of chapter 405 provided that those properties "shall be subject to assessment for capital improvements to be constructed within the district” according to a formula to be determined by the Syracuse Common Council by ordinance (emphasis added). Subdivision (B) of the same section provided the second purpose for which properties in the district might be assessed: "Such ordinance may further provide that the capital improvements and facilities constructed within the said special assessment district as heretofore provided shall be operated and maintained, and the cost of such additional operation and maintenance taxed and assessed to the properties benefited within the special district by reason of the construction of such capital improvements and facilities.” (Emphasis added.)
Seeking to take advantage of the enabling legislation, the Syracuse Common Council adopted ordinances in 1975 and 1976 creating a special assessment district encompassing much of the downtown business area, determining assessment formulae and taking other action intended to implement chapter 405, including the establishment of a special district operations and development committee as required by the statute (General Ordinance 27-1975; Ordinances 61-1976, 210-1976). Working as "The Downtown Committee”, this group began its activities in 1976, the year in which the challenged special assessments were begun to be imposed on plaintiffs’ properties as well as on other properties in the district.
Resisting payment, plaintiffs commenced this action in 1980 for a declaration that the special assessments were void as to them. Payment of accrued assessments was ultimately made under protest in the summer of 1986, and the complaint *202 amended to add a request for refund of the sums paid together with interest. Plaintiffs-intervenors’ application to join in the action was granted by order signed May 15, 1987. All parties subsequently moved for summary judgment.
A careful reading of chapter 405 of the Laws of 1975 makes it evident that the motion by plaintiffs, joined in by plaintiffsintervenors, for summary judgment declaring the special assessments imposed on them invalid and directing refund of the moneys paid must be granted.
As indicated above, there are only two purposes for which assessments may be imposed on properties within the special assessment district — for capital improvements constructed within the district and for the cost of additional operation and maintenance of capital improvements and facilities constructed under the enabling legislation (L 1975, ch 405, § 3 [A], [B]). The annual reports to the Common Council by the Downtown Committee included in the papers submitted to the court demonstrate that the Committee has not undertaken construction of any capital improvements or facilities, but has instead from the time of its creation directed its efforts to subsidization of parking in the downtown area, increased security there by the provision of auxiliary police, maintenance of the downtown environment by augmentation of clean-up services, publication and promotion of downtown events and establishments, and encouragement of economic development through the attraction and retention of businesses to and in the central business district of the city. At his examination before trial in June of last year, the Committee’s executive director, who has held the position since the Committee was formed, identified the last four of the above programs as the projects on which the Committee’s funds are spent. When asked whether the Committee had ever made an expenditure for a capital improvement in the special assessment district or whether anything of a tangible nature that stays in downtown had ever been constructed, he explicitly stated that the Committee "has not used the provisions that they are empowered to do for any type of physical improvements”. That statement is consistent with the attitude expressed in its report of 1978 activities in which, as to capital improvements, the Committee said, "Given the expense associated with major capital improvements, the Committee’s participation in capital improvement projects is limited to planning review with the City Administration”. The heading "Cap *203 ital Improvements” was not continued in any of the annual reports for subsequent years that were included in the motion papers.
This court must give effect to the Legislature’s limitations on purposes for which special assessments may be imposed under the enabling act. In so doing it must reject the city’s reliance on the "such other powers” language in section 2 of chapter 405 as authority for imposing assessments to cover the Committee’s promotional activities — as distinguished from its nonexistent activities of construction of capital improvements or operation or maintenance of constructed improvements or facilities. As chapter 405 is organized, sections 2 and 3 address discrete subjects, the former specifying the kinds of activities in which the city may engage with respect to the special assessment district and the latter providing a limited assessment power to finance some, but not all, of those activities. The specificity reflected in the provisions of section 3 negates the conclusion the city would have drawn that the "such other powers” language of section 2 provides a blanket assessment authority with respect to properties in the special assessment district. Eminently applicable is the statement by the Court of Appeals in Bender v Jamaica Hosp. (40 NY2d 560, 561-562): "Where the statute is clear and unambiguous on its face, the legislation must be interpreted as it exists (McKinney’s Cons Laws of NY, Book 1, Statutes, § 76; New Amsterdam Cas. Co. v Stecker, 3 NY2d 1; Meltzer v Koenigsberg, 302 NY 523). Absent ambiguity the courts may not resort to rules of construction to broaden the scope and application of a statute (New Amsterdam Cas. Co. v Stecker, supra; Matter of Patrolmen’s Benevolent Assn. of City of Buffalo v City of Buffalo, 50 AD2d 101) and must apply the plain import of the statute (Matter of Trustees of N. Y. & Brooklyn Bridge, 72 NY 527) * * * The courts are not free to legislate and if any unsought consequences result, the Legislature is best suited to evaluate and resolve them (Bright Homes v Wright, 8 NY2d 157).” It is evident from a reading of chapter 405 as adopted in 1975 that the Legislature did not then contemplate that special assessments would be the source of all funding for activities undertaken pursuant to the enabling act. Section 8 (E) of the statute requires that the annual proposed budget to be submitted to the city’s budget director by the district operations and development committee shall include recommendations as to funds and other sources of revenue against which expenses should be charged. Four *204 such sources are listed, with notation that the list is not exclusive, of which special assessments are only one.
Finally, if construction of chapter 405 by the court as to the extent of the authority to assess properties in the special assessment district were appropriate, the court would apply the principle applicable in determining whether property is subject to taxation — namely, "A statute which levies a tax is to be construed most strongly against the government and in favor of the citizen. The government takes nothing except what is given by the clear import of the words used, and a well-founded doubt as to the meaning of the act defeats the tax” (People ex rel. Mutual Trust Co. v Miller, 177 NY 51, 57, quoted with approval in Matter of Grace v New York State Tax Commn., 37 NY2d 193, 196) — and would find the assessments here reviewed unauthorized.
Plaintiffs and plaintiffs-intervenors are entitled to a judgment declaring that the challenged assessments imposed on their properties are illegal and void as not authorized by section 405 of the Laws of 1975 and directing that the city refund such assessments as have been paid by them together with interest from the date of payment.