[No. D046728. Fourth Dist., Div. One. July 7, 2006.]

COUNTY OF SAN DIEGO, Plaintiff and Appellant, v.
GROSSMONT-CUYAMACA COMMUNITY COLLEGE DISTRICT,
Defendant and Respondent.

**COUNSEL**

John J. Sansone, County Counsel, and C. Ellen Pilsecker, Deputy County Counsel, for Plaintiff and Appellant.

Stephenson, Worley, Garratt, Schwartz, Garfield & Prairie and Kevin P. Sullivan for Defendant and Respondent.

**OPINION**

**NARES, Acting P. J.**—Defendant Grossmont-Cuyamaca Community College District (the District) prepared a master plan approving 20 construction and remodel projects (hereafter the project) at its Cuyamaca College campus in the unincorporated community of Rancho San Diego that will accommodate a substantial growth in student population and result in significant impacts to off-campus traffic. Acting pursuant to the California Environmental Quality Act (CEQA)[1] and the CEQA Guidelines,[2] the District prepared and certified the adequacy of the final environmental impact report (final EIR) for the project, adopted a statement of overriding considerations with CEQA findings, and approved the master plan, asserting that it is legally and economically infeasible for the District to pay for any off-campus road improvements to mitigate the off-campus traffic impacts and that the unavoidable adverse environmental effects of the project are acceptable because the project's benefits outweigh those effects.

The County of San Diego (the County) filed a petition for writ of mandate to challenge the District's decisions to certify the final EIR, adopt the CEQA findings and statement of overriding considerations and approve the master plan, claiming that the District is subject to the requirements of CEQA, the District's findings are not supported by substantial evidence, and the District must adopt feasible measures to mitigate the significant adverse impacts of the project on off-campus traffic. The court denied the petition and entered judgment in favor of the District.

The County appeals, contending (1) the District is subject to the mitigation requirements of CEQA; (2) the District's findings of infeasibility are not supported by substantial evidence or the law, and thus the District failed to

---

[1] CEQA, which was enacted in 1970, is codified at Public Resources Code section 21000 et seq. All further statutory references are to the Public Resources Code unless otherwise specified.

[2] The CEQA Guidelines are found at California Code of Regulations, title 14, section 15000 et seq. All further references to the CEQA Guidelines refer to title 14 of the California Code of Regulations.

comply with its CEQA obligations; (3) the District's claim of legal infeasibility is erroneous; (4) the District's failure to adopt mitigation measures is not excused by its adoption of the statement of overriding considerations because it is not supported by substantial evidence; and (5) the District's argument that its funding of off-campus traffic mitigation measures would be an unconstitutional gift to the County of public funds is unavailing because CEQA does not require a gift of public funds.

We must determine whether the District prejudicially abused its discretion by certifying the final EIR, adopting the CEQA findings and statement of overriding considerations, and approving the master plan without adopting feasible measures to mitigate the project's adverse significant off-campus traffic impacts that are identified in the final EIR. To make this determination, we must decide whether the District is authorized by the Legislature to spend public funds to improve off-campus roads and intersections, some of which are owned and maintained by the County, and therefore whether it is legally feasible within the meaning of CEQA for the District to fund its proportional share of the needed off-campus road improvements as a means of mitigating the off-campus traffic impacts identified in the final EIR. We must also decide whether substantial evidence supports the District's claim of economic infeasibility.

We conclude the District is authorized under the provisions of the Community College Construction Act of 1980 (Ed. Code, § 81800 et seq.), Education Code section 81949, and pertinent regulations (specifically, Cal. Code Regs., tit. 5, §§ 57100 & 57121, subd. (f)) to spend public funds to mitigate the project's significant adverse off-campus traffic impacts, and thus the District's claim of legal infeasibility fails. We also conclude the District's claim of economic infeasibility is not supported by substantial evidence. Accordingly, we hold that the District prejudicially abused its discretion, and the judgment must be reversed.

### FACTUAL BACKGROUND

#### A. *Cuyamaca College Master Plan*

In April 2004, in an effort to expand and improve its Cuyamaca College campus, the District prepared a Cuyamaca College Master Plan (the master plan) that identified 20 construction and remodeling projects that were needed to accommodate anticipated growth in the student population at the campus. The proposed projects include the construction and remodeling of academic and administrative buildings, expansion of parking lots and physical education facilities, and renovations of existing buildings for code compliance and technology upgrades. The proposed improvements will be built through about

2015 and will allow the campus to accommodate the anticipated growth from the current enrollment of about 8,000 students to the projected enrollment of 15,000 students.

A portion of the funds needed to implement the master plan will come from bond revenues authorized by Proposition R, which the District's voters approved in November 2002. County counsel's analysis of Proposition R, contained in the voter information pamphlet, stated that "[t]he proceeds of [the] bonds of the [District] would be used to repair leaking roofs, worn wiring and plumbing, and aging restrooms; renovate aging and deteriorating classrooms and labs; and repair, acquire, construct and equip college buildings, sites, and science and computer labs at Grossmont College and Cuyamaca College in order to prepare students for jobs and four-year colleges, to train medical workers, nurses and safety officers, and to relieve overcrowding." No Proposition R funds were authorized to be spent on offsite traffic improvements.

### B. *Draft Environmental Impact Report*

As the lead agency for the project under CEQA, the District prepared a draft environmental impact report (the draft EIR) that examined the significant environmental impacts that will result from implementation of the master plan. Included in the draft EIR was a discussion of the traffic impacts. Specifically, the draft EIR examined a number of off-campus intersections and road segments that would be affected by the master plan and stated that the plan would result in significant impacts to transportation network operations absent mitigation measures.[3] The draft EIR stated that certain "roadway improvements are planned as part of the County Circulation Element," and labeled those improvements as mitigation measures. The draft EIR also stated that several recommended mitigation measures addressing project impacts to intersection operations "will be incorporated into the County improvements planned as part of the Circulation Element."

### C. *County's Objection to the Draft EIR*

In early April 2004 the County objected to the draft EIR traffic study and its identification of the County as the entity responsible for implementing mitigation measures for the project. The County detailed its concern that the draft EIR failed to provide adequate mitigation measures for potentially significant traffic impacts. The District then prepared the final EIR.

---

[3] Because the issues presented in this appeal do not involve the specific nature or extent of either the significant adverse off-campus traffic impacts or the road improvements that are needed to mitigate those impacts, we need not, and shall not, discuss them in detail.

### D. *Final EIR, CEQA Findings, and Statement of Overriding Considerations*

The District's governing board (hereafter the District's board) considered certification of the final EIR and adoption of a statement of overriding considerations for the project. Following a public meeting, the District's board certified the adequacy of the final EIR under CEQA, adopted CEQA findings and the statement of overriding considerations, and approved the master plan.

The District itself made no commitment to implement any traffic mitigation measures. The final EIR stated, however, that *"to the extent permitted by law*, the [District] may participate with the [County]" (italics added) to mitigate the project's off-campus traffic impacts.

In its CEQA findings, the District made a finding (hereafter sometimes referred to as the infeasibility finding) that certain economic and legal considerations made infeasible the traffic mitigation measures identified in the final EIR. In support of its infeasibility finding, the District stated that the County and the State of California, Department of Transportation (Caltrans), rather than the District, have jurisdiction over the roadway improvement projects, and the District lacks statutory authorization to even fund a proportional share of any off-site traffic improvements to any roadway segments.

In its statement of overriding considerations, the District asserted that its board, "after balancing the specific economic, legal, social, technological, and other benefits of the project against its unavoidable environmental impacts, determines that the unavoidable adverse environmental effects may be considered 'acceptable' due to the following specific considerations, which collectively are sufficient to outweigh the unavoidable, adverse environmental impacts of the [project]." The District then listed the following eight "overriding considerations": (1) implementation of the master plan, (2) increased employment opportunities, (3) increased sales tax revenue, (4) establishment of a framework for the expenditure of Proposition R funds, (5) revitalization of Cuyamaca College campus facilities, (6) implementation of state building code compliance measures on existing facilities, (7) increased economic benefits to the local community, and (8) *inability of the District to fund off-campus traffic improvements*.

## PROCEDURAL BACKGROUND

### A. *County's Writ Petition*

The County challenged the District's refusal to mitigate the off-campus traffic impacts of the project by filing a petition for a writ of mandate

directing the District to (1) set aside its certification of the final EIR, adoption of CEQA findings and the statement of overriding considerations, and its approval of the master plan; and (2) prepare a new environmental impact report. In support of its petition, the County asserted that the traffic mitigation measures set forth in the final EIR were inadequate because substantial evidence did not support the finding that the County should be responsible for the needed road improvements, the final EIR did not demonstrate that either the District or the County made a binding commitment to implement the mitigation measures, and the failure to adopt mitigation measures was not excused by the adoption of the statement of overriding considerations.

The County also asserted that the District's finding that it was infeasible to make off-campus improvements to mitigate the significant impacts on area traffic was erroneous because Government Code section 54999.1, subdivision (d) (discussed, *post*) did not apply, the District's reliance on *San Marcos Water Dist. v. San Marcos Unified School Dist.* (1986) 42 Cal.3d 154 [228 Cal.Rptr. 47, 720 P.2d 935] (*San Marcos*) was unavailing because that case did not involve CEQA, the District's CEQA mitigation obligation is not a special assessment, and the Legislature has authorized the imposition of mitigation responsibilities on the District. The County also maintained that although the state Constitution prohibits gifts of public funds, CEQA does not require such a gift.

### B. *District's Opposition*

In its written opposition to the petition, the District argued it was "infeasible for the District to mitigate the offsite traffic impacts resulting from its project" because "no authority allows [it] to utilize legislatively-allocated educational monies to enhance the County's local transportation infrastructure," and the County "cannot use CEQA's mitigation requirements to overcome well-settled precedent that prohibits one public agency from charging another agency to pay for local infrastructure improvements absent express authorization from the Legislature." Citing *San Marcos, supra*, 42 Cal.3d 154, Government Code section 54999.1, subdivision (d), and Education Code section 81606, the District also claimed that traffic impact fees demanded by the County are special assessments that the Legislature has not authorized the County to impose on the District.

### C. *Judgment*

Following oral argument on the petition, the court took the matter under submission. In April 2005 the court issued a minute order denying the County's petition. The court found that substantial evidence supported the final EIR, the statement of overriding considerations, the master plan, and

the District's infeasibility finding. Based on its independent review, the court also found that "the obligation to mitigate environmental impacts of the project does not include payment of traffic impact mitigation expenses or payment of special assessments by the District. Such an obligation does not exist without express legislative authorization." The County's appeal from the judgment followed.

## STANDARD OF REVIEW

In *Mira Mar Mobile Community v. City of Oceanside* (2004) 119 Cal.App.4th 477, 486 [14 Cal.Rptr.3d 308] (*Mira Mar Mobile Community*), this court explained that "[i]n a mandate proceeding to review an agency's decision for compliance with CEQA, we review the administrative record de novo [citation], focusing on the adequacy and completeness of the EIR and whether it reflects a good faith effort at full disclosure. [Citation.] Our role is to determine whether the challenged EIR is sufficient as an information document, not whether its ultimate conclusions are correct. [Citation.]" An EIR is presumed adequate. (§ 21167.3, subd. (a).)

We review an agency's action under CEQA for a prejudicial abuse of discretion. (§ 21168.5.) "Abuse of discretion is established if the agency has not proceeded in a manner required by law or if the determination or decision is not supported by substantial evidence." (*Ibid.*; see *Mira Mar Mobile Community, supra,* 119 Cal.App.4th at p. 486.)

In defining the term "substantial evidence," the CEQA Guidelines state: " 'Substantial evidence' . . . means enough relevant information and reasonable inferences from this information that a fair argument can be made to support a conclusion, even though other conclusions might also be reached. Whether a fair argument can be made . . . is to be determined by examining the whole record before the lead agency. Argument, speculation, unsubstantiated opinion[,] narrative [or] evidence which is clearly erroneous or inaccurate . . . does not constitute substantial evidence." (CEQA Guidelines, § 15384, subd. (a).) "In applying the substantial evidence standard, we resolve all reasonable doubts in favor of the administrative finding and decision. [Citation.]" (*Mira Mar Mobile Community, supra,* 119 Cal.App.4th at p. 486.)

Although the District's factual determinations are subject to the foregoing deferential rules of review, "questions of interpretation or application of the requirements of CEQA are matters of law. [Citations.] While we may not substitute our judgment for that of the decision makers, we must ensure strict compliance with the procedures and mandates of the statute. [Citation.]" (*Save Our Peninsula Committee v. Monterey County Bd. of Supervisors* (2001) 87 Cal.App.4th 99, 118 [104 Cal.Rptr.2d 326].)

## DISCUSSION[4]

The County maintains that the District is subject to the mitigation requirements of CEQA. It also asserts that the District's infeasibility finding is not supported by substantial evidence, and the District's claim of legal infeasibility is erroneous.

In response, the District does not dispute that it is subject to the provisions and requirements of CEQA. The District contends, however, that substantial evidence and applicable legal authorities support its findings that mitigation of the adverse traffic impacts identified in the final EIR is not "feasible" within the meaning of CEQA because (1) the County has exclusive jurisdiction over the affected roads, (2) the District cannot assure the needed road improvements will actually be implemented, (3) construction of "many of the required traffic mitigation measures [is] constrained by limited right-of-way" and "would require eminent domain and displacement of residents," and (4) the District cannot "lawfully pay for the offsite traffic improvements." The District thus posits that mitigation of the adverse traffic impacts is not legally or economically feasible. The District also contends that substantial evidence supports its finding that the benefits of the project outweigh its unavoidable adverse environmental effects, and thus its statement of overriding considerations meets the requirements of CEQA.

We reject the District's contentions and conclude the County has met its burden of showing the District's infeasibility finding is not supported by substantial evidence or applicable law. .

### A. *The District's Infeasibility Finding*

In its infeasibility finding, which it adopted under section 21081, subdivision (a)(3) and CEQA Guidelines section 15091, subdivision (a)(3) (discussed, *post*), the District stated that "there are no other feasible mitigation measures that would mitigate the near- and long-term traffic impacts of the [project] to below a level of significance" and "specific *economic, legal,* social, technological or other considerations . . . make *infeasible* the mitigation measures identified in the final EIR. The [District's board] has determined that this impact is acceptable because of specific overriding considerations and benefits of the project which outweigh the significant effects on the environment as outlined in the attached Statement of Overriding Considerations." (Italics added.)

---

[4] The District's unopposed request for judicial notice of the notice of determination for the Cuyamaca College Master Plan of expansion final EIR filed by the District on April 21, 2004, an authenticated copy of which is attached to the written request, is granted. (Evid. Code, §§ 452, subd. (h), 453.)

In support of the infeasibility finding, the District stated in part that the mitigation measures identified in the final EIR were infeasible because "the [County] and Caltrans, not the District, have jurisdiction" over the roadway improvement projects, and "the District is without statutory authorization to even fund a proportional share of any offsite traffic improvements to [any] roadway segments . . . and to do so would constitute an impermissible gift of public funds." The District also stated that "specific economic considerations make further mitigation measures infeasible," because "insufficient right-of-way exists to further widen the affected roadway segments and/or intersections" and unspecified "costs for right-of-way acquisition . . . would likely be significant."

### B. *Applicable Provisions of CEQA and the CEQA Guidelines*

#### 1. *CEQA's "substantive mandate"*

■ CEQA codifies the important statewide policy of "[e]nsur[ing] that the long-term protection of the environment . . . shall be the guiding criterion in public decisions." (§ 21001, subd. (d).)[5] "The foremost principle under CEQA is that the Legislature intended the act 'to be interpreted in such manner as to afford the fullest possible protection to the environment within the reasonable scope of the statutory language.'" (*Laurel Heights Improvement Assn. v. Regents of University of California* (1988) 47 Cal.3d 376, 390 [253 Cal.Rptr. 426, 764 P.2d 278], citing *Friends of Mammoth v. Board of Supervisors* (1972) 8 Cal.3d 247, 259 [104 Cal.Rptr. 761, 502 P.2d 1049].)

CEQA contains a "substantive mandate" requiring public agencies to refrain from approving projects with significant environmental effects if "there are *feasible* alternatives or *mitigation measures*" that can substantially lessen or avoid those effects. (*Mountain Lion Foundation v. Fish and Game Com.* (1997) 16 Cal.4th 105, 134 [65 Cal.Rptr.2d 580, 939 P.2d 1280] (*Mountain Lion Foundation*), italics added; see also § 21002 ["The Legislature finds and declares that it is the policy of the state that public agencies should not approve projects as proposed if there are feasible alternatives or feasible mitigation measures available which would substantially lessen the significant environmental effects of such projects . . . "].) The CEQA Guidelines define the term "feasible" as "capable of being accomplished in a successful manner within a reasonable period of time, taking into account *economic*, environmental, *legal*, social, and technological factors." (CEQA Guidelines, § 15364, italics added.)

---

[5] Section 21001, subdivision (d) provides: "The Legislature . . . finds and declares that it is the policy of the state to: [¶] . . . [¶] (d) Ensure that the long-term protection of the environment, consistent with the provision of a decent home and suitable living environment for every Californian, shall be the guiding criterion in public decisions."

### 2. *Findings under section 21081 and CEQA Guidelines section 15091*

██ "CEQA's substantive mandate that public agencies refrain from approving projects for which there are feasible alternatives or mitigation measures is effectuated in section 21081. [Citation.]" (*Mountain Lion Foundation, supra,* 16 Cal.4th at p. 134.) Section 21081 "effectuates the 'substantive mandate' of CEQA by requiring an agency to make certain findings before approving any project with significant effects." (Remy et al., Guide to Cal. Environmental Quality Act (10th ed. 1999) pp. 286–287, fn. omitted.)

Section 21081 provides in part that "no public agency shall approve or carry out a project for which an environmental impact report has been certified which identifies one or more significant effects on the environment that would occur if the project is approved or carried out" unless (among other things) the agency makes one or more of three findings specified in subdivision (a)(1)–(3) of that section "with respect to each significant effect."[6] (See also CEQA Guidelines, § 15091, subd. (a) (hereafter CEQA Guidelines section 15091(a)).)[7]

---

[6] Section 21081 provides in full: "Pursuant to the policy stated in Sections 21002 and 21002.1, no public agency shall approve or carry out a project for which an environmental impact report has been certified which identifies one or more significant effects on the environment that would occur if the project is approved or carried out unless both of the following occur: [¶] (a) The public agency makes one or more of the following findings with respect to each significant effect: [¶] (1) Changes or alterations have been required in, or incorporated into, the project which mitigate or avoid the significant effects on the environment. [¶] (2) Those changes or alterations are within the responsibility and jurisdiction of another public agency and have been, or can and should be, adopted by that other agency. [¶] (3) Specific economic, legal, social, technological, or other considerations, including considerations for the provision of employment opportunities for highly trained workers, make infeasible the mitigation measures or alternatives identified in the environmental impact report. [¶] (b) With respect to significant effects which were subject to a finding under paragraph (3) of subdivision (a), the public agency finds that specific overriding economic, legal, social, technological, or other benefits of the project outweigh the significant effects on the environment."

[7] CEQA Guidelines section 15091(a) provides: "(a) No public agency shall approve or carry out a project for which an EIR has been certified which identifies one or more significant environmental effects of the project unless the public agency makes one or more written findings for each of those significant effects, accompanied by a brief explanation of the rationale for each finding. The possible findings are: [¶] (1) Changes or alterations have been required in, or incorporated into, the project which avoid or substantially lessen the significant environmental effect as identified in the final EIR. [¶] (2) Such changes or alterations are within the responsibility and jurisdiction of another public agency and not the agency making the finding. Such changes have been adopted by such other agency or can and should be adopted by such other agency. [¶] (3) Specific economic, legal, social, technological, or other considerations, including provision of employment opportunities for highly trained workers, make infeasible the mitigation measures or project alternatives identified in the final EIR."

Citing section 21081, subdivision (a) (hereafter section 21081(a)) and CEQA Guidelines section 15091(a), one leading commentator has explained that "[f]or each significant effect identified in the EIR, the approving agency must make one or more of the following findings: (1) that changes or alterations have been required in, or incorporated into, the project that avoid or substantially lessen the effect; (2) that the agency making the findings lacks jurisdiction to make the change, but that another agency does have such authority, and either has made, or can and should make, the change; and/or (3) *that specific economic, legal,* social, technological, or other *considerations*, including considerations for the provision of employment opportunities for highly trained workers, *make infeasible the mitigation measures or project alternatives identified in the final EIR.*" (Remy et al., Guide to Cal. Environmental Quality Act, *supra*, at p. 323, italics added.)

An agency's finding of infeasibility under section 21081(a)(3) and CEQA Guidelines section 15091(a)(3) must be supported by substantial evidence in the administrative record. (§ 21081.5 ["In making the findings required by [section 21081(a)(3)], the public agency shall base its findings òn substantial evidence in the record"]; CEQA Guidelines § 15091(b) ["The findings required by [CEQA Guidelines section 15091(a)] shall be supported by substantial evidence in the record"].)

### 3. *Statement of overriding considerations*

■ Also pertinent to this appeal is subdivision (b) of section 21081 (hereafter section 21081(b)),[8] which codifies an "override" requirement and comes into play where the lead agency has issued an infeasibility finding under section 21081(a)(3) and CEQA Guidelines section 15091(a)(3). (See Remy et al., Guide to Cal. Environmental Quality Act, *supra*, at p. 341.) The corresponding implementing regulation is CEQA Guidelines section 15093,[9] under the provisions of which the District adopted its statement of overriding

---

[8] See footnote 6, *ante.*

[9] CEQA Guidelines section 15093 provides in full: "(a) CEQA requires the decision-making agency to balance, as applicable, the economic, legal, social, technological, or other benefits of a proposed project against its unavoidable environmental risks when determining whether to approve the project. If the specific economic, legal, social, technological, or other benefits of a proposal project outweigh the unavoidable adverse environmental effects, the adverse environmental effects may be considered 'acceptable.' [¶] (b) When the lead agency approves a project which will result in the occurrence of significant effects which are identified in the final EIR but are not avoided or substantially lessened, the agency shall state in writing the specific reasons to support its action based on the final EIR and/or other information in the record. The statement of overriding considerations shall be supported by substantial evidence in the record. [¶] (c) If an agency makes a statement of overriding considerations, the statement should be included in the record of the project approval and should be mentioned in the notice of determination. This statement does not substitute for, and shall be in addition to, findings required pursuant to [CEQA Guidelines Section] Section 15091."

considerations in this case. Subdivision (b) of that CEQA Guideline (hereafter CEQA Guidelines section 15093(b)) provides in part that when the lead agency approves a project that "will result" in significant environmental effects that are identified in the final EIR but are not avoided or substantially lessened, the agency "shall" state in a written "statement of overriding considerations" the "specific reasons to support its action based on the final EIR and/or other information in the record."

In *Sierra Club v. Contra Costa County* (1992) 10 Cal.App.4th 1212, 1222 [13 Cal.Rptr.2d 182], the Court of Appeal explained that "[a] statement of overriding considerations reflects the final stage in the decisionmaking process by the public body. A public agency can approve a project with significant environmental impacts only if it finds such effects can be mitigated or concludes that unavoidable impacts are acceptable because of overriding concerns. [Citations.] If approval of the project will result in significant environmental effects which 'are not at least substantially mitigated, the agency shall state in writing the specific reasons to support its action based on the final EIR and/or other information in the record.' [Citation.] These reasons constitute the statement of overriding considerations which is intended to demonstrate the balance struck by the body in weighing the 'benefits of a proposed project against its unavoidable environmental risks.' [Citations.] [¶] 'Whereas the [mitigation and feasibility] findings . . . typically focus on the feasibility of specific proposed alternatives and mitigation measures, the statement of overriding considerations focuses on the larger, more general reasons for approving the project, such as the need to create new jobs, provide housing, generate taxes, and the like.' [Citation.]"

The statement of overriding considerations, like an infeasibility finding under section 21081(a)(3) and CEQA Guidelines section 15091(a)(3) (discussed, *ante*), must be supported by substantial evidence in the administrative record. (CEQA Guidelines, § 15093, subd. (b).)[10]

C. *Analysis*

*Claim of legal infeasibility*

In support of its claim of *legal* infeasibility, the District first asserts that "[n]owhere in the comprehensive statutory scheme relating to community college districts is there any legislative authorization for the [District] to fund or build offsite street improvements." Asserting that its primary mission is to offer academic and vocational instruction, the District relies on Education

---

[10] CEQA Guidelines section 15093, subdivision (b) provides in part: "The statement of overriding considerations shall be supported by substantial evidence in the record."

Code section 14020.1 (discussed, *post*) for the proposition that statutory limits on its expenditures "do not permit use of the funds for offsite transportation infrastructure."

We recognize that "an agency's authority to impose mitigation measures must be based on legal authority other than CEQA." (1 Kostka & Zischke, Practice Under the Cal. Environmental Quality Act (Cont.Ed.Bar 1st ed. 2005) § 17.18, pp. 820–821; see also § 21004,)[11] (CEQA Guidelines, § 15040, subd. (b).)[12] The record shows, however, that the District accepts its responsibility under CEQA to mitigate significant impacts on air quality, aesthetics and visual quality, biological resources, cultural resources, hydrology and water quality, paleontology, and noise. The District does not explain how expenditure of funds to mitigate these project-related environmental impacts is permitted if, as it claims, the District is only authorized to spend funds on educational services.

▌ The District's reliance on Education Code section 14020.1 is misplaced. That section provides in part that "[t]he amount transferred to Section B of the State School Fund pursuant to Section 8.5 of Article XVI of the State Constitution shall to the maximum extent feasible be expended or encumbered during the year received solely for the purposes of instructional improvement and accountability." By its own terms, Education Code section 14020.1 applies only to "[t]he amount transferred to Section B of the State School Fund pursuant to Section 8.5 of Article XVI of the State Constitution." However, article 16, section 8.5, subdivision (a) of our state Constitution expressly requires the state controller during each fiscal year to allocate funds "[*i*]*n addition to* the amount required to be applied for the support of . . . community college districts pursuant to Section 8." (Italics added.) Thus, Education Code section 14020.1 restricts only a portion of the state funds provided to the District.[13]

The District's reliance on Education Code section 14020.1 as a broad legal limitation on expenditures is further undermined by Education Code section

---

[11] Section 21004 provides: "In mitigating or avoiding a significant effect of a project on the environment, a public agency may exercise only those express or implied powers provided by law other than this division. However, a public agency may use discretionary powers provided by such other law for the purpose of mitigating or avoiding a significant effect on the environment subject to the express or implied constraints or limitations that may be provided by law."

[12] Section 15040, subdivision (b) of the CEQA Guidelines provides that "CEQA does not grant an agency new powers independent of the powers granted to the agency by other laws." Subdivision (e) of that CEQA Guideline provides that "[t]he exercise of discretionary powers for environmental protection shall be consistent with express or implied limitations provided by other laws."

[13] The administrative record does not identify the amount of funds the District receives under either section of article 16 of the California Constitution.

81952, one of the statutes set forth in the Community College Revenue Bond Act of 1961 (Ed. Code, § 81901 et seq.), which provides that the District "may use for the payment of the costs of acquisition, *construction, or completion of any project*, any funds made available to the board by the State of California or any other funds provided by the board from any source, to be expended for the accomplishing of the purposes set forth in this chapter, together with the proceeds of revenue bonds issued and sold by the board." (Ed. Code, § 81952, italics added.)

The District is statutorily authorized under the Community College Construction Act of 1980 (Ed. Code, § 81800 et seq.) to utilize its funds to construct "adequate facilities" to meet the needs of a growing community college student population. Specifically, the Legislature expressly declared in section 81800, subdivision (b) of the Education Code that "it is in the interest of the state and of the people thereof for the state to provide assistance to community college districts for the construction of community college facilities. The community college system is of general concern and interest to all the people of the state, and the education of community college students is a joint obligation and function of both the state and community college districts. [¶] In enacting this chapter, *the Legislature considers that there is a need to provide adequate community college facilities that will be required to accommodate community college students resulting from growth in population* and from legislative policies expressed through implementation of the Master Plan for Higher Education." (Italics added.)

The foregoing declaration in Education Code section 81800 makes clear the Legislature contemplated that as California's community college student population grows, the state will be required to provide assistance to community college districts for the construction of "adequate community college facilities" that are needed to accommodate that growing population.

■ A growing community college is not an island unto itself, particularly in Rancho San Diego where Cuyamaca College is surrounded by residential and commercial development. In our view, expenditure of the District's funds on off-campus road and intersection improvements designed to accommodate the increased volume of student and faculty vehicular traffic to and from the Cuyamaca College campus that the project will generate, is implicitly authorized by section 81800 of the Community College Construction Act of 1980 (discussed, *ante*) and pertinent regulations. Specifically, the CEQA Guidelines are expressly adopted as part of the regulations promulgated to implement the Community College Construction Act of 1980.[14] California Code of

---

[14] California Code of Regulations, title 5, section 57100, subdivision (a) provides: "The regulations adopted under this Chapter [i.e., chapter 8 (Construction) of division 6 (California Community Colleges)] are pursuant to the California Environmental Quality Act of 1970

Regulations, title 5, section 57121, subdivision (f), expressly provides that the chancellor of California Community Colleges "shall withhold authorization for the use of state funds for construction *until requirements of [CEQA] have been met*." (Italics added.)

■ To the extent the District is required under CEQA to help fund off-campus road and intersection improvements that are needed to mitigate adverse offsite traffic impacts that are created by the project, but fall within the responsibility of the County,[15] the CEQA compliance mandate set forth in California Code of Regulations, title 5, section 57121, subdivision (f) (discussed, *ante*) and Education Code section 81949 authorize the District to make those expenditures. Education Code section 81949 provides that "[t]he board may construct *any project* and acquire all property necessary therefor on such terms and conditions as it may deem advisable," and "[w]hen any part of the work is to be done or performed by any public body . . . jointly or in conjunction with the board, the portion of the cost thereof to be borne by the board may be turned over . . . to any other public body to be expended by it in the . . . *completion of the project*." (Italics added.)

The District relies on Education Code section 81606 for the proposition that "[o]nly direct frontage [traffic] improvements by a community college are permitted by statute." That section provides in part that "[t]he governing board of any community college district *may* grade, pave, construct sewers, or otherwise improve streets . . . in front of real property owned or controlled by it."[16] (Italics added.) The District's reliance on that section is misplaced.

■ " 'The fundamental rule of statutory construction is that a court should ascertain the intent of the Legislature so as to effectuate the purpose of

---

(division 13 commencing with section 21000 of the Public Resources Code) and Guidelines adopted by Secretary for Resources in Division 6, Title 14, California Administrative Code." Subdivision (c) of that regulation provides that "[i]t is the intent of the Board of Governors to adopt in substance the [CEQA] Guidelines adopted by the Secretary for Resources in division 6, title 14, California Administrative Code, section 15000 et seq."

[15] The administrative record shows that the District offered to "participate" with the County "to the extent permitted by law" with respect to some of the traffic mitigation measures identified in the final EIR. Table 1 of section 3.0 (Mitigation Monitoring Program) of the master plan in the final EIR indicates more specific measures for such participation.

[16] Education Code section 81606 provides in full: "The governing board of any community college district may grade, pave, construct sewers, or otherwise improve streets and other public places in front of real property owned or controlled by it, and also may construct in immediate proximity to any school or site owned or controlled by the district, pedestrian tunnels, overpasses, footbridges, sewers and water pipes when required for school or administrative purposes, may acquire property, easements and rights-of-way for such purpose, and may appropriate money to pay the cost and expense of the improvements, whether made by the board under contract executed by the board, or under contracts made in pursuance of any of the general laws of the state respecting street improvements, or under other contracts made in pursuance of the charter of any County or municipality."

the law. [Citation.]' [Citation.] 'To determine the intent of legislation, we first consult the words themselves, giving them their usual and ordinary meaning. [Citations.]' [Citation.] Where the statutory wording is clear a court 'should not add to or alter [it] to accomplish a purpose that does not appear on the face of the statute or from its legislative history. [Citation.]' [Citation.]" (*Johnston v. Sonoma County Agricultural Preservation & Open Space Dist.* (2002) 100 Cal.App.4th 973, 986 [123 Cal.Rptr.2d 226].) "We must also construe statutes to reach a reasonable legislatively intended result [citation], and to harmonize competing statutes to effectuate the legislative policy." (*Ibid.*)

Here, the term "may" in Education Code section 81606 is permissive and authorizes a community college district to "grade, pave, construct sewers, or otherwise improve streets . . . ." However, that section makes no mention of CEQA and contains no prohibitory language indicating a legislative intent to abrogate a community college district's obligation under CEQA's "substantive mandate" (discussed, *ante*) to refrain from approving projects with significant environmental effects if there are feasible mitigation measures that can substantially lessen or avoid those effects. (See *Mountain Lion Foundation, supra,* 16 Cal.4th at p. 134.) Under this interpretation, the permissive language in Education Code section 81606 may be harmonized with applicable provisions of CEQA, the CEQA Guidelines, and thus the CEQA compliance mandate set forth in California Code of Regulations, title 5, section 57121, subdivision (f) (also discussed, *ante*) requiring the chancellor of the California Community Colleges to withhold authorization for use of state construction funds until the requirements of CEQA have been met.

Citing *San Marcos, supra,* 42 Cal.3d 154, the District also contends that the County's "demand" under CEQA that the District pay road improvement fees or spend funds for street improvements is "functionally equivalent" to a prohibited "special assessment," and any such payment by the District would be a "gift of public funds" in contravention of article XVI, section 6 of the California Constitution. We reject these contentions and conclude the District's reliance on *San Marcos* is unavailing.

In *San Marcos,* the California Supreme Court held that a school district was not obligated to pay a sewer capacity fee imposed by a water district because the fee was "a special assessment which has not been authorized by the Legislature." (*San Marcos, supra,* 42 Cal.3d at p. 168.) The high court explained that a special assessment is a compulsory charge imposed on particular real property for a public improvement of direct benefit to that property. (*Id.* at pp. 161–162; see also *Loyola Marymount University v. Los Angeles Unified School Dist.* (1996) 45 Cal.App.4th 1256, 1268 [53 Cal.Rptr.2d 424].) The Supreme Court also explained in *San Marcos* that

"[t]he rationale behind a public entity's exemption from . . . *special assessments* is to prevent one tax-supported entity from siphoning tax money from another such entity; the end result of such a process could be unnecessary administrative costs and no actual gain in tax revenues. [Citation.]" (*San Marcos, supra,* 42 Cal.3d at p. 161, italics added.)

*San Marcos* is inapplicable here because it did not involve CEQA. Furthermore, the District's mitigation obligation under CEQA cannot be construed under that case as a compulsory charge imposed for a public improvement of direct benefit to the District's property. Rather, that obligation is a CEQA requirement that (1) directly benefits the environment, both on and off the Cuyamaca College campus; (2) is incorporated into the Community College Construction Act of 1980 by means of implementing administrative regulations (Cal. Code Regs., tit. 5, §§ 57100, subds. (a), (c), & 57121, subd. (f), discussed, *ante*); and (3) is imposed under CEQA's "substantive mandate" (discussed, *ante*) only where, as here, the District itself undertakes a project that significantly and adversely affects the environment. In any event, the District is implicitly authorized under the Community College Construction Act of 1980, Education Code section 81949, and the provisions of the aforementioned regulations to spend funds on project-related off-campus road and intersection improvements as mitigation measures under CEQA, and thus even if the District's obligation to mitigate its adverse off-campus traffic impacts could be construed as a compulsory charge, it would not be a special assessment because the expenditure of the District's funds to meet that obligation is legislatively authorized. (See *San Marcos, supra,* 42 Cal.4th at p. 161.) We conclude that the District's mitigation obligation under CEQA is not a prohibited special assessment, and the District's claim that it lacks legislative authorization to mitigate its project's significant adverse off-campus traffic impacts is unsupported by the administrative record or applicable law.

The District's reliance on Government Code section 54999.1, subdivision (d)[17] (hereafter Government Code section 54999.1(d)) is also unavailing. That subdivision is found in what the California Supreme Court has called the "San Marcos Legislation" (Gov. Code, §§ 54999–54999.6; Stats. 1988, ch. 52, § 1, p. 310), which the Legislature adopted in response to the Supreme Court's decision in *San Marcos, supra,* 42 Cal.3d 154. (See *Utility Cost Management v. Indian Wells Valley Water Dist.* (2001) 26 Cal.4th 1185, 1189 [114 Cal.Rptr.2d 459, 36 P.3d 2] (*Utility Cost Management*).)

---

[17] Government Code section 54999.1(d) provides: " 'Public utility facility' means a facility for the provision of water, light, heat, communications, power, or garbage service, for flood control, drainage or sanitary purposes, or for sewage collection, treatment, or disposal."

The San Marcos Legislation partially abrogated the *San Marcos* decision, as shown by Government Code section 54999, subdivision (b), which states: "The Legislature . . . finds that the holding in [*San Marcos, supra*, 42 Cal.3d 154], should be revised to authorize payment and collection of capital facilities fees subject to the limitations set forth in this chapter, and in furtherance of this finding the Legislature hereby enacts the following provisions." Noting that there was no legislative authority for imposing capital facilities fees on public entities prior to the San Marcos Legislation, the Supreme Court explained in *Utility Cost Management* that section 54999.2 "authorizes public utilities to impose a 'capital facilities fee' on public entities 'except as provided in Section 54999.3,' and section 54999.1 defines a ' "capital facilities fee" ' as 'any nondiscriminatory charge to pay the capital cost of a public utility facility.' Section 54999.3 enumerates restrictions applicable when a public utility imposes the fees on either a state agency or an educational entity[.] In these circumstances, the fee must be 'necessary to defray the actual construction costs of that portion of a public utility facility actually serving' the agency or educational entity. [Citation.]" (*Utility Cost Management, supra*, 26 Cal.4th at pp. 1189–1190, italics omitted.)

Citing Government Code section 54999.1(d), the District asserts that "the Legislature has never stated that a community college may use its education funds to pay for off-campus traffic infrastructure a—even though it . . . promulgated the list of permissible fees that may be charged against public entities for offsite public infrastructure improvements." The District's reliance on Government Code section 54999.1(d) is misplaced, however, because the San Marcos Legislation makes no mention of CEQA, and the underlying *San Marcos* decision that was partially abrogated by that legislation did not involve CEQA or the issue of traffic mitigation. These omissions show the Legislature's understanding that CEQA traffic mitigation obligations were unaffected by both *San Marcos* and the San Marcos Legislation, including Government Code section 54999.1(d).

Because the District is authorized by the Legislature to spend public funds to mitigate the off-campus adverse traffic impacts at issue in this case, and the District's CEQA mitigation obligation cannot be construed as a prohibited special assessment, we also conclude that any such expenditure by the District would not be a gift of public funds prohibited by article XVI, section 6 of the California Constitution.

### D. *Claim of Economic Infeasibility*

The District's claim of *economic* infeasibility is based on its assertion that construction of "many of the required traffic mitigation measures [is] constrained by limited right-of-way" and "would require eminent domain and

displacement of residents." The District maintains that its finding of infeasibility is supported by substantial evidence. The County argues that the administrative record contains no evidence of economic infeasibility.

For purposes of CEQA, and as already discussed, the term "feasible" means "capable of being accomplished in a successful manner within a reasonable period of time, taking into account *economic*, environmental, legal, social, and technological factors." (CEQA Guidelines, § 15364, italics added.)

Here, the administrative record contains no estimate of the cost of the District's proportional share of the off-campus traffic mitigation measures identified in the final EIR. Without evidence of the amount of any such cost, we must conclude there is no substantial evidence to support the District's claim that mitigation of the adverse project-related off-campus traffic impacts is economically infeasible.

■ In sum, because the District's infeasibility findings are not supported by substantial evidence or applicable law, we conclude the District prejudicially abused its discretion by certifying the final EIR, adopting the statement of overriding considerations and related CEQA findings, and approving the master plan.[18] (§ 21168.5 ["Abuse of discretion is established if the agency has not proceeded in a manner required by law or if the determination or decision is not supported by substantial evidence"]; *Mira Mar Mobile Community, supra,* 119 Cal.App.4th at p. 486.)

## DISPOSITION

The judgment is reversed, and the matter is remanded to the superior court with directions to issue a peremptory writ (1) vacating the District's certification of the final EIR, its adoption of the CEQA findings and the statement of overriding considerations, and its approval of the master plan; and

---

[18] In light of the foregoing determinations, we need not, and do not, address the question of whether the District's statement of overriding considerations is supported by substantial evidence. Section 21081(b) (discussed, *ante*) indicates that the obligation to adopt a statement of overriding considerations is triggered only when an agency makes a finding under subdivision (a)(3) of that section that certain considerations "make infeasible the mitigation measures or alternatives identified in the [EIR]." (See Remy et al., Guide to Cal. Environmental Quality Act, *supra*, at p. 343.) Here, for reasons already discussed, reversal is required because the District's infeasibility finding under section 21081(a)(3) is not supported by applicable law or substantial evidence. We also need not decide whether the District is a "state agency" within the meaning of section 21106, which provides that "[a]ll state agencies, boards and commissions shall request in their budgets the funds necessary to protect the environment in relation to problems caused by their activities." This issue was the subject of the parties' supplemental letter briefing requested by this court on March 8, 2006.

(2) ordering the District not to take any further action to approve the project without the preparation, circulation and consideration under CEQA of a legally adequate environmental impact report with regard to the off-campus traffic mitigation issues. The County shall recover its costs on appeal.

McIntyre, J., and Aaron, J., concurred.